311 So.2d 104 (1975)
STATE of Florida, County of Dade, Appellant,
v.
William ECKER, Appellee.
STATE of Florida, County of Dade, Appellant,
v.
Walter HARRIS, Appellee.
Joseph BELL, Appellant,
v.
STATE of Florida, Appellee.
Billy WORTH, Appellant,
v.
STATE of Florida, Appellee.
Nos. 44348, 44349, 44586 and 44587.
Supreme Court of Florida.
February 19, 1975.
Rehearing Denied April 30, 1975.
*105 Robert L. Shevin, Atty. Gen., and J. Robert Olian, Asst. Atty. Gen., for County of Dade and State of Florida, appellant-appellee.
Phillip A. Hubbart, Public Defender, and Mark King Leban, Melvin Black and Kurt Lyle Marmar, Asst. Public Defenders, for *106 Joseph Bell, Billy Worth, William Ecker and Walter Harris, appellant-appellee.
Stanley M. Pred and Michael L. Mann, Miami, for American Civil Liberties Union of Florida, Inc., amicus curiae.
OVERTON, Justice.
This decision concerns the constitutionality of this state's "loitering" statute, Section 856.021, Florida Statutes (1973). Four cases have been consolidated for the purpose of this appeal. The cases of Bell v. State and Worth v. State are direct appeals from trial court convictions under the subject statute. The cases of State v. Ecker and State v. Harris are appeals by the State of Florida from trial court orders dismissing charges brought for a violation of the subject statute. In each case, the constitutional issue was properly raised and we have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution.
We hold that Section 856.021, Florida Statutes, is constitutional and a proper law enforcement tool to protect the public safety, subject to the conditions and limitations herein expressed.
The statute in issue, Section 856.021, Florida Statutes, reads as follows:
"Loitering or prowling; penalty
"(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
"(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
"(3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083."
Under the provisions of this statute, the elements of the offense are: (1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals; (2) such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. This alarm is presumed under the statute if, when a law officer appears, the defendant flees, conceals himself, or refuses to identify himself. Prior to any arrest, the defendant must be afforded an opportunity to dispel any alarm or immediate concern by identifying himself and explaining his presence and conduct. If it appears at trial that the explanation is true and would have dispelled the alarm or immediate concern, then the defendant may not be convicted under this statute.
Many state vagrancy, loitering and disorderly conduct laws, including a Jacksonville ordinance, have been the subject of litigation in recent years. Loitering statutes *107 have been struck down for vagueness and overbreadth. Palmer v. City of Euclid, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); City of Portland v. White, 9 Or. App. 239, 495 P.2d 778 (1972). See also Annot., Vagrancy Statutes  Validity, 25 A.L.R.3d 792; Annot., Loitering Statutes  Validity, 25 A.L.R.3d 836.
In Papachristou v. City of Jacksonville, supra, the United States Supreme Court held unconstitutional the Jacksonville ordinance patterned after Section 856.02, Florida Statutes (1971),[1] which was the immediate predecessor of the statute now under attack. The principal reason given by the United States Supreme Court for striking down this former statute was the "unfettered discretion" placed in the hands of the police in enforcing the ordinance.
Following this decision, our legislature, in an attempt to cure the infirmities of this earlier loitering law, enacted the present Section 856.021. This new statute abandons completely the language of the predecessor statute and is patterned after the Model Penal Code, Proposed Official Draft Section 250.6 of the American Law Institute (1962). The drafters intended that this type of statute or ordinance be a justifiable and valuable law enforcement tool for the protection of society and for the preservation of public peace and order.
The Model Penal Code provision was drawn in such a manner as to meet the defects and infirmities in earlier vagrancy laws. Appellate courts in several jurisdictions, in striking down their own vagrancy laws, have voiced approval of this Model Penal Code provision. People v. Berck, 32 N.Y.2d 567, 347 N.Y.S.2d 33, 300 N.E.2d 411 (1973), cert. den. 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550; State v. Starks, 51 Wis.2d 256, 186 N.W.2d 245 (1971); Seattle v. Drew, 70 Wash.2d 405, 423 P.2d 522 (1967).
The question before this Court requires a delicate balancing between the protection of the rights of individuals and the protection of individual citizens from imminent criminal danger to their persons or property.
The present statute, Section 856.021, Florida Statutes, is constitutionally attacked on the grounds that it (1) is vague and overbroad; (2) requires self-incrimination; and (3) is subject to arbitrary enforcement.

Vagueness and Overbreadth
We readily recognize that if the statute broadly proscribed loitering or idling, without more, as in the manner of our previous statute, it would be unconstitutional. On the other hand, it is recognized that if a statute proscribes loitering that threatens public safety or a breach of the peace, it can withstand constitutional attack. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Shuttlesworth v. Birmingham, 382 U.S. 87, *108 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); Camarco v. City of Orange, 61 N.J. 463, 295 A.2d 353 (1972); People v. Solomon, 33 Cal. App.3d 429, 108 Cal. Rptr. 867, cert. den. 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974); People of Detroit v. Ritchey, 25 Mich. App. 98, 181 N.E.2d 87 (1970).
In Shuttlesworth v. Birmingham, supra, the Supreme Court of the United States upheld a New Hampshire statute which forbade any person to address any offensive, derisive, or annoying word to any other person who was lawfully in a public place. The New Hampshire Supreme Court had construed the statute as limited to the use in a public place of words directly tending to cause a breach of the peace by provoking the person addressed to acts of violence.
In Shuttlesworth v. Brimingham, supra, the United States Supreme Court upheld as constitutional the construction of an Alabama statute which made it an offense to so stand, loiter, or walk upon any street or sidewalk as to obstruct free passage over or along said street or sidewalk after the offender was requested by any police officer to move on. The Alabama Court of Appeals had narrowly construed the statute. It held that the mere refusal to move on, after a police officer had requested that a person standing or loitering should do so, was not enough to support the offense. The court required that there must also be a showing of the accused's blocking free passage. Middlebrooks v. Birmingham, 42 Ala.App. 525, 527, 170 So.2d 424, 426 (1964).
In Camarco v. City of Orange, supra, the Supreme Court of New Jersey upheld a statute which made unlawful:
"(a) ... `such loitering conduct as clearly will cause an immediate, actual physical violent reaction from any person, which violent reaction will cause a threat to the peace and order of the public'; ... (b) ... loitering which will so disturb a person of ordinary sensibilities `as to cause such person to react immediately in such a way as to threaten by physical violence the peace and order of the public'... (c) ... loitering which `obstructs the free passage of pedestrians or vehicles' ... (d) ... loitering when it will `obstruct, molest, or interfere' with any person lawfully in a public place... ."
Coupled with the foregoing was a provision which was construed to mean that there must be a refusal to obey a police order to move on before a charge under the ordinance could be prosecuted.
In People v. Solomon, supra, in which the United States Supreme Court denied certiorari, the Court of Appeals for the Second District of California upheld the constitutionality of a loitering statute which provides that a loiterer may be found guilty of disorderly conduct if (1) he loiters without apparent reason and refuses to identify himself and account for his presence when requested by any peace officer to do so, and if (2) surrounding circumstances indicate that public safety demands such inquiry. The California court construed the requirement of identification to be primary and controlling. It interpreted the requirement that the offender account for his presence as wholly subordinate and an adjunct to the requirement of identification, it being operative only to the extent that it assisted in producing credible and reliable identification. The court concluded that to require more would impinge upon the privilege against self-incrimination. The case distinguished Papachristou v. City of Jacksonville, supra, and Palmer v. City of Euclid, supra, holding that once a person had furnished suitable identification, he had satisfied the statute and could not be arrested or prosecuted for failure to account for his presence or failure to give a satisfactory or plausible account to the interrogating police officer.
In People of Detroit v. Ritchey, supra, and People v. Wedlow, 17 Mich. App. 134, *109 169 N.W.2d 145 (1969), the Court of Appeals of Michigan upheld a loitering ordinance which was limited in its application to those persons who were obstructing free passage of pedestrians.
In United States v. Cassiagnol, 420 F.2d 868 (4th Cir.1970), cert. den. 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654, the Fourth Circuit Court of Appeals has approved as constitutional a General Services Administration regulation which prohibits "unseemly or disorderly conduct and unwarranted loitering and assembly" upon government property. The Court of Appeals, in construing this regulation, determined that it had a duty to interpret the regulation in a manner not inconsistent with the demands of the constitution and must avoid a holding of unconstitutionality if a fair construction of the regulation would so allow. It further construed the regulation as prohibiting conduct which interfered with, delayed or impeded the normal and orderly conduct of government business on federal property. The enforcement of this regulation was against antiwar demonstrators at the Pentagon.
There is an important common thread in each of the aforementioned cases. In each instance either the peace and order were threatened or the public safety was involved.
We fully recognize that the Court of Appeals of Oregon, in City of Portland v. White, supra, struck down an ordinance similar to our statute and the Model Penal Code provision on the ground that the ordinance was designed to permit arrests on suspicion and was therefore void for vagueness. In our opinion, the Oregon court failed to apply the judicial principle of construing the wishes of the legislative body in a manner that would make the legislation constitutionally permissible. We have a duty to avoid a holding of unconstitutionality if a fair construction of the legislation will so allow. The aforementioned cases upholding similar types of legislation have all adhered to this basic legal principle.
We hold that Section 856.021, Florida Statutes, is not vague or overbroad and specifically the words "under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity" mean those circumstances where peace and order are threatened or where the safety of persons or property is jeopardized. In justifying an arrest for this offense, we adopt the words of the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968): "... the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a finding that a breach of the peace is imminent or the public safety is threatened.

Self-Incrimination
It is contended that the statute is unconstitutional because for all practical purposes it requires an accused to "identify himself and explain his presence and conduct." The issue of identification and the issue of explanation are separate and distinct. Under circumstances where the public safety is threatened, we find no constitutional violation in requiring credible and reliable identification. That issue has apparently been settled in California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), where the court upheld a statutory requirement that a driver involved in a vehicular accident give the owner of damaged property the name and address of the driver and of the owner of the vehicle. The court found this information was not a violation of the Fifth Amendment, holding that the mere possibility of incrimination is insufficient and that disclosure of name and address is essentially a neutral act. We find no difference in *110 a requirement that an individual identify himself under circumstances where the public safety is threatened.
We recognize that a defendant cannot be required to "explain his presence and conduct," this being constitutionally prohibited. We hold the provision in the statute which affords a person charged thereunder an opportunity to explain his presence and conduct is an additional defense to the charge. Clearly, an accused cannot be compelled to explain his presence and conduct without first being properly advised under Miranda standards. If the accused voluntarily explains his presence and such explanation dispels the alarm, no charge can be made.

Arbitrary Application
The defendants contend that this statute authorizes police officers to use their unbridled discretion to arrest whomever they please. We disagree. This statute only authorizes an arrest where the person loitering or prowling does so under circumstances which threaten a breach of the peace or the public safety. While the statute might be unconstitutionally applied in certain situations, this is no ground for finding the statute itself unconstitutional.
We are not here dealing with the historical loitering and vagrancy statute that makes status a crime and gives uncontrolled discretion to the individual law enforcement officer to make the determination of what is a crime. As previously noted, the statute contains two elements: (1) loitering or prowling in a place at a time and in a manner not usual for law-abiding individuals, and (2) such loitering and prowling were under circumstances that threaten the public safety. Proof of both elements is essential in order to establish a violation of the statute. This statute comes into operation only when the surrounding circumstances suggest to a reasonable man some threat and concern for the public safety. These circumstances are not very different from those that the United States Supreme Court described as "specific and articulable facts" in Terry v. Ohio, supra.
Clearly, when these elements are established and the individual either refuses or fails to properly identify himself or flees when confronted by a law enforcement officer, the offense has been established.
On the other hand, under circumstances where the elements are established but the accused, upon being confronted by a law enforcement officer, properly produces credible and reliable identification and complies with the orders of the law enforcement officer necessary to remove the threat to the public safety, or voluntarily offers a reasonable explanation for his presence that dispels the alarm and threat, then the charge under this statute can no longer properly be made.
The whole purpose of the statute is to provide law enforcement with a suitable tool to prevent crime and allow a specific means to eliminate a situation which a reasonable man would believe could cause a breach of the peace or a criminal threat to persons or property.

Application to Specific Cases
As to the particular application of the statute to the defendants before this Court in the cases sub judice, we hold as follows:
In Bell v. State, the record reflects that the defendant was hiding among bushes at a private dwelling at 1:20 a.m. When the officer came in response to a call, he saw the defendant jump from the fence surrounding the dwelling and start running. The officer apprehended the defendant and placed him under arrest. The record clearly establishes the elements of the offense under Section 856.021, Florida Statutes. The defendant's hiding on private property behind a bush at 1:20 in the morning would cause a reasonable person to be concerned for his safety or the safety of property in the vicinity. The fact that the defendant attempted to flee when the law enforcement officer came upon the scene, coupled with the fact that the defendant's *111 car had a stolen tag on it, raises a clear issue of credible identification. The defendant was represented by counsel before the trial court and testified in his own behalf. The defendant accepted the opportunity to explain his presence and conduct, but his testimony raised an issue of fact concerning his presence in the vicinity. The defendant said at the trial that his car "quit" and that he went to get help. The arresting officer, in response, said that after the arrest he received the car keys from the defendant and "cranked up" the car. Another officer then drove the vehicle away for impoundment. The trier of fact clearly did not believe the explanation given by the defendant.
Although the circumstances justified an arrest under Section 856.021, Florida Statutes, the testimony of the arresting officer who stated, "I arrested him for loitering because we could not prove anything else," is disturbing. The use of Section 856.021 as a "catchall" criminal offense may result in a finding that the statute has been unconstitutionally applied. Fortunately in this instance the elements of the offense were fully established by the evidence. Under the circumstances of this case, we affirm the conviction but caution law enforcement officers that this statute contains separate, distinct elements that must be established in the same manner as those of any other criminal offense.
In Worth v. State, the record reflects that the defendant was in a warehouse area at 9:30 p.m. He was stopped by three lay citizens, who called the police. The testimony at the trial relates primarily to statements that were made by the defendant after Miranda warnings had been given to him. The citizens who called the police and who were concerned about his presence in the area did not testify in the cause. There is a clear inference from this record that the defendant was in the area for the purpose of stripping an automobile located near one of the warehouses. The circumstances surrounding this incident should have been testified to by the individual citizens who observed the defendant's conduct. The elements of this offense were not properly established by the sole testimony of arresting officers who did not observe the circumstances that justified the concern for the safety of property by the lay citizens who made the call. The admissions and explanation of the defendant are not in and of themselves sufficient for conviction on this record. We must reverse the conviction, but in so doing we wish to stress that the circumstances inferred from this record would constitute a violation of Section 856.021, Florida Statutes, if properly established.
In State v. Ecker, the complaint reflects that the defendant was observed in front of an apartment building. When approached for identification, he apparently had no proper or credible identification. The charging complaint shows no circumstances that threaten the public safety, and, therefore a charge of loitering could not be properly established. The holding by the trial judge that Section 856.021, Florida Statutes, is unconstitutional is reversed, but, under the circumstances of the complaint, the discharge of the defendant is affirmed.
In State v. Harris, the record fails to include the charge or complaint made against the defendant. We reverse the holding by the trial court that the statute is unconstitutional and remand this cause to the trial court for determination not inconsistent with the construction of the subject statute herein expressed.
It is so ordered.
ADKINS, C.J., and ROBERTS, McCAIN and DEKLE, JJ., concur.
ERVIN (Retired), J., dissents with opinion with which BOYD, J., concurs.
ERVIN, Justice (Retired), dissenting.
Section 856.021, Florida Statutes, seeks to resurrect constitutionally but in different *112 verbiage coloration all of the old invasions of personal freedom of movement of the citizen protected by the constitution which invasions were condemned in Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) and other cases.
All of the attempted rationalization and effort to distinguish in principle this new statute from the older vagrancy statute and ordinances which were stricken is sheer sophistry. Compare City of Portland v. White, 9 Or. App. 239, 495 P.2d 778 (1972). But today we must manifest ourselves to be "law and order" exponents  constitutional guarantees to the contrary notwithstanding. There are ample valid "law and order" statutes on the books to protect the public safety without this further statutory incursion into basic freedoms of the American citizen.
BOYD, J., concurs.
NOTES
[1] § 856.02, F.S. (1971):

"Vagrants.  Rogues and vagabonds, idle or dissolute persons who go about begging, common gamblers, persons who use juggling, or unlawful games or plays, common pipers and fiddlers, common night walkers, thieves, pilferers, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons who neglect their calling or employment, or are without reasonably continuous employment or regular income and who have not sufficient property to sustain them, and misspend what they earn without providing for themselves or the support of their families, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, idle and disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses or tippling shops, persons able to work but habitually living upon the earnings of their wives or minor children, and all able bodied male persons over the age of eighteen years who are without means of support and remain in idleness, shall be deemed vagrants, and upon conviction shall be subject to the penalty provided in § 856.03."