411 So.2d 237 (1982)
The STATE of Florida, Appellant,
v.
Sebastian Americo CORON, Appellee.
No. 81-598.
District Court of Appeal of Florida, Third District.
February 23, 1982.
Rehearing Denied April 13, 1982.
*238 Jim Smith, Atty. Gen. and Joel D. Rosenblatt, Asst. Atty. Gen., for appellant.
Neil M. Nameroff, Miami, for appellee.
Before HUBBART, C.J., and BARKDULL and BASKIN, JJ.
BASKIN, Judge.
Finding no illegality in defendant's arrest, we reverse the trial court's order suppressing evidence obtained as a result of the arrest. Defendant contends that his warrantless arrest for loitering and prowling[1] was illegal because the offense was not committed in the presence of Detective Edgerton, the officer who formally placed defendant Coron under arrest. We reject defendant's contention because the arrest was effected by the first officer on the scene, Officer Llano-Montes.
Officer Llano-Montes, responding to a call regarding a shooting shortly after midnight, noticed a car with flashing headlights. When he stopped to inquire, the driver told him that he had seen a man run from an area next to the house where the shooting had occurred. Officer Llano-Montes approached Coron, who appeared to be staggering. The officer observed dried grass in Coron's hair and on his back. Coron's shoes were wet, although no rain had fallen; his speech was slurred[2] and his face was flushed. When asked what he was doing in the area, Coron gave several conflicting answers, first stating that he was in the area to see his girlfriend, then responding *239 that he didn't know where she lived. He next said that he was looking for a cab because his car had broken down and his girlfriend would not drive him home.
Officer Llano-Montes took defendant Coron into custody, instructed him that he was not free to leave, handcuffed him, and placed him in the patrol car. He subsequently advised Coron of his rights.
Although Officer Llano-Montes did not announce, "You are under arrest," his conduct clearly informed Coron that he was, in fact, under arrest. See Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Royer v. State, 389 So.2d 1007 (Fla. 3d DCA 1980) (en banc), review denied, 397 So.2d 779 (Fla.), cert. granted, ___ U.S. ___, 102 S.Ct. 631, 70 L.Ed.2d 612 (1981).
Turning to the substance of the charge, we find that the arrest for loitering and prowling, predicated upon circumstances which were more than sufficient to cause a reasonable person to be concerned for his safety or the safety of property in the vicinity, State v. Ecker, 311 So.2d 104 (Fla.), cert. denied sub nom. Bell v. Florida, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975), was valid. In Ecker, the Supreme Court of Florida, discussing Bell's conviction, stated:
When the officer came in response to a call, he saw the defendant jump from the fence surrounding the dwelling and start running. The officer apprehended the defendant and placed him under arrest... . The defendant's hiding on private property behind a bush at 1:20 in the morning would cause a reasonable person to be concerned for his safety or the safety of property in the vicinity.
Id. at 110. The facts under review presented even greater cause for concern.
We also reject defendant's contention that Detective Edgerton lacked probable cause to arrest him for burglary and second-degree murder. Testimony established that when Detective Edgerton investigated a report that a burglar had been shot, he learned from Officer Llano-Montes that eyewitnesses saw defendant run from an area next to the burglarized house immediately after the shots were fired. Although the victim,[3] who had shot the intruder, furnished a description dissimilar to defendant Coron's appearance, the victim's son-in-law identified the defendant as the man who had run from the house. The detective's investigation revealed that spotlights fourteen feet from the ground had been removed, suggesting that two people were involved; that broken glass remained in one of the spotlight sockets; and that defendant's hands were cut. In addition, the deceased's vehicle was discovered parked nearby. Following a conversation with Coron during which he gave still another reason for his presence, Detective Edgerton placed Coron under arrest. From these facts we conclude that probable cause existed for Coron's arrest for burglary and second-degree murder.
Because we hold that defendant's arrest was sustainable both for loitering and prowling and for the felonies of burglary and second-degree murder, we reverse the order entered by the trial court suppressing fingerprints taken pursuant to the arrest.
Reversed and remanded.
NOTES
[1] Section 856.021, Florida Statutes (1979):

856.021 Loitering or prowling; penalty
(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the person or other circumstances makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
(3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.
[2] When questioned concerning his presence in the vicinity, defendant Coron appeared to be intoxicated. The trial court's suppression of his statements on that ground is not challenged.
[3] The victim of the burglary, Mr. Guitierrez, shot and killed Coron's accomplice. The second-degree murder charge against Coron was based on felony-murder, that is, on the occurrence of the homicide during the commission of the burglary.