471 So.2d 147 (1985)
D.A., a Juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-1646.
District Court of Appeal of Florida, Third District.
June 11, 1985.
*149 Bennett H. Brummer, Pub. Defender, and Robin H. Greene, Asst. Pub. Defender, for appellant.
Jim Smith, Atty. Gen., and Calianne P. Lantz, Asst. Atty. Gen., for appellee.
Before HUBBART, NESBITT and JORGENSON, JJ.
HUBBART, Judge.
The respondent juvenile D.A. appeals an adjudication of delinquency for the offense of loitering and prowling [§ 856.021, Fla. Stat. (1983)], entered below after a non-jury trial. He contends on appeal that the essential elements of the offense were not established below and that the court erred in denying his motion for judgment of acquittal at trial. We agree and reverse.

I
The facts of this case are as follows. On April 29, 1983, Officer David Bosworth of the Miami Police Department was on duty in a patrol car in the Overtown area of Miami. At 3:15 p.m., he received a call over his police radio to investigate a "disturbance" at 500 N.W. 5th Street. Upon arriving on the scene, Officer Bosworth discovered no disturbance but saw a white van parked in an alley in front of a vacant lot at this address. The houses bordering the alley were fully fenced so that there *150 was no way of entry from these houses into the alley. Standing in front of the van was the respondent D.A. and an adult male. As Officer Bosworth backed up his patrol car and looked down the alley, the respondent D.A. and the adult male ran. Officer Bosworth then drove down the alley and observed three other people running away from inside one of the fenced yards along the alley. Officer Bosworth then radioed a description of the respondent D.A. and the adult male companion. He returned to the van and discovered that its ignition had been "punched" so that a screwdriver could be used to start it instead of a key; thick blue tape had been placed over the name "Tropical Provision Company" on the truck's side door; and extra tape was found on the hood and on the ground. Officer Bosworth was informed over his police radio that this van had been stolen that morning from Tropical Provision Company at 845 N.W. 71 Street in Miami.
Officer Mary Reed of the Miami Police Department was also on patrol car duty at this time. She received over her police radio a description from Officer Bosworth of the two people who were seen fleeing from the above-described alley. She proceeded directly to the scene and observed the respondent D.A. coming from behind one of the houses on the corner of N.W. 5th Avenue and 4th Street, about a half block from the spot where Officer Bosworth had first seen the two persons in question in the alley. The respondent D.A. looked at Officer Reed and turned to walk away. At that point, Officer Reed asked the respondent to stop and he did so. Officer Bosworth then arrived on the scene and identified the respondent. Efforts to speak to the respondent proved essentially futile as the officers spoke only English and the respondent, who spoke only Spanish, indicated that he could not understand them. Officer Bosworth then arrested the defendant for grand theft of the van and for loitering and prowling.
The state charged the respondent D.A. with loitering and prowling through a delinquency petition filed before the circuit court. The delinquency petition reads in pertinent part as follows:
"This child, on or about April 29, 1983, in Dade County, Florida, did unlawfully loiter and prowl at a place located at or near 433 N.W. 4th Street, Dade County, Florida, at approximately 3:15 P.M., in a manner not usual for law abiding individuals under circumstances that warrant a justifiable concern for the safety of the persons or property in the vicinity, to wit: STANDING BY A STOLEN MOTOR VEHICLE, ENTERING THE YARD OF A RESIDENCE NOT HIS OWN, RUNNING FROM THE AREA BETWEEN HOUSES AND/OR BEING UNABLE TO DISPELL [SIC] OFFICERS ALARM FOR THE SAFETY OF PERSONS AND/OR PROPERTY IN THE AREA, in violation of 856.021 Florida Statutes."
The respondent entered a denial and was tried before the court without a jury. At the trial, the above facts were established through the only two witnesses who testified: Officer Bosworth and Officer Reed. The respondent, through counsel, moved for a judgment of acquittal at the close of all the evidence arguing in some detail that the state had failed to establish a prima facie case of loitering and prowling. The trial court denied the motion and adjudicated the respondent delinquent. This appeal follows.

II
The offense of loitering and prowling, as proscribed by Section 856.021, Florida Statutes (1983), has two distinct elements which the state must establish at trial: "(1) The defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals; (2) such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." State v. Ecker, 311 So.2d 104, 106 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975). "Proof of both elements is essential in order to establish *151 a violation of the statute," State v. Ecker, supra at 110, and each element must be proved beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

A
As to the first element, it must be established that the defendant engaged in incipient criminal behavior which law-abiding people do not usually engage in due to the time, place, or manner of the conduct involved. The gist of this element is aberrant and suspicious criminal conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive crime. It does not, however, involve behavior which constitutes no threat of immediate, future criminal activity. See Model Penal Code § 250.6 comment at 388-91 (1980).
In this connection, the statute is forward-looking, rather than backward-looking in nature. Its purpose is to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act. As the Florida Supreme Court stated in State v. Ecker, supra, "[t]he whole purpose of the statute is to provide law enforcement with a suitable tool to prevent crime ...," Id. at 110, and as stated in the comment to Section 250.6 of the Model Penal Code upon which the statute is patterned, State v. Ecker, supra at 107, "[t]his formulation limits the offense to its essential law enforcement rationale of justifying intervention to prevent incipient crime... ." Model Penal Code § 250.6 comment at 391 (1980). Florida cases, in turn, sustaining loitering or prowling convictions have uniformly involved incipient crime situations which satisfy this element. For example, in Hardie v. State, 333 So.2d 13 (Fla. 1976), the convicted defendant was observed at 2:55 a.m. rummaging through two separate cars at a closed gas station, but before he made any move to steal or attempt to steal the cars. In Bell v. State, 311 So.2d 104, 110-11 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975), the convicted defendant was found hiding in the bushes at a private dwelling at 1:20 a.m., but before he made any move to break into or attempt to break into the dwelling. In In re A.R., 460 So.2d 1024 (Fla. 4th DCA 1984), the adjudicated juvenile was observed on two occasions standing on the sidewalk in a high-crime area watching traffic at 10:00-11:00 p.m. while his companion entered fenced car lots, peeked into car windows and tried car doors, but before the juvenile made an overt act to aid and abet his companion in the commission of any burglary.
By way of contrast, however, this first element of the crime of loitering and prowling, i.e., unusual behavior, is not directed at suspicious after-the-fact criminal behavior which solely indicates involvement in a prior, already completed substantive criminal act. For example, in Patmore v. State, 383 So.2d 309 (Fla.2d DCA 1980), where a loitering conviction was reversed, the defendant was observed running from the police at 9:00 p.m. and, in the process, discarding a bag of marijuana on the street in the immediate vicinity of a recent armed robbery. His activity, the court concluded, was sufficient to justify a temporary investigative stop for robbery and to effect an arrest for possession of marijuana  all past and completed crimes  but insufficient to justify a conviction for loitering and prowling. The defendant's activity in no way pointed to the commission of future criminal activity. This is not to suggest, however, that the commission of a prior or on-going substantive crime necessarily negates the first element of the crime. For example, the defendant in Hardie had clearly committed a car burglary; the defendant in Bell had clearly committed a trespass; and the juvenile's companion in A.R. had clearly committed a burglary of the car lot  yet loitering and prowling convictions were upheld in each of these cases. It is only to point out that it is a sine qua non of the first element of this offense that the defendant's behavior must point to immediate future criminal activity and not *152 refer exclusively to prior criminal activity as in Patmore.
By way of further contrast, this element is also not directed at non-aberrant, harmless behavior which, by its very nature, poses no threat of immediate future criminal activity. For example, in In re O.W., 423 So.2d 1029 (Fla. 4th DCA 1982), where a loitering and prowling adjudication was reversed, the police observed the juvenile, a 13-year-old boy, running with two companions from some bushes across a vacant field during school hours on a school day. When stopped, the boys stated they were skipping school. The court found, in effect, that the first element of the offense had not been established because climbing trees, playing in bushes, and running through woods and fields were not unusual activities for a 13-year-old boy; plainly, the juvenile was skipping school and his activity in no way pointed toward immediate, future criminal conduct. In L.S. v. State, 449 So.2d 1305 (Fla.3d DCA 1984), this court, citing O.W., supra, reached a similar result where the juvenile, a 14-year-old boy, was observed crouching in the bushes near an expressway exit. A loitering and prowling adjudication was reversed on the basis that such playful activity was plainly not unusual for a 14-year-old boy and did not point to future criminal activity. Moreover, neither the fact that past drug transactions had taken place in the field through which O.W. ran, nor that past robberies and purse snatches had taken place at the expressway exit where L.S. was observed, changed the results in these cases because, if it had, children living in high crime areas would be precluded from playing and frolicking in many parts of their neighborhoods. Also in V.S. v. State, 446 So.2d 232 (Fla.3d DCA 1984), this court reversed a loitering and prowling adjudication involving a juvenile who was stopped on the street based solely on a police "hunch." Being out on the street, in itself, is plainly harmless behavior and, without more, poses no threat of immediate future criminal activity.

B
As to the second element, which is the heart of the offense, it must be established that the defendant engaged in conduct that warranted a justifiable or reasonable alarm or immediate concern for the safety of persons or property in the vicinity. The gist of this element is that the aberrant or incipient criminal behavior, stated above, must be alarming in nature; that is, it must threaten the physical safety of persons in the area or the safety of property in the area. It is not enough that the subject criminal behavior point towards the commission or attempted commission of any type of substantive crime; it must point toward the commission or attempted commission of a crime against a person or a crime against certain property in the vicinity. It must, in a word, amount to an imminent breach of the peace or an imminent threat to public safety. State v. Ecker, supra at 109, 110; Model Penal Code § 250.6 comment, supra.
For example, in Bell v. State, supra, which affirmed a loitering and prowling conviction, the defendant's actions in hiding in the bushes of a private dwelling at 1:20 a.m. obviously threatened the safety of persons and property in the said dwelling. And in Hardie v. State, supra, which affirmed a loitering and prowling conviction, the defendant's actions in rummaging through two cars at a closed gas station at 2:55 a.m. obviously constituted a threat to the safety of the cars in question. Also in In re A.R., supra, which affirmed a loitering and prowling adjudication, the juvenile's actions in watching traffic while his companion burglarized an adjacent closed car lot at 10:00-11:00 p.m. obviously constituted a threat to the safety of the cars on the lot. On the other hand, in B.A.A. v. State, 356 So.2d 304 (Fla. 1978), rev'g, 333 So.2d 552 (Fla.3d DCA 1976), where a loitering and prowling adjudication was reversed, the female juvenile's actions in approaching stopped cars in traffic and engaging the drivers in conversation created no threat whatever to the safety of persons or property in the area. The Court concluded *153 that if the juvenile was, as the district court found, engaged in solicitation for prostitution, she should have been so charged because this activity in no way created a reasonable alarm for the safety of persons or property in the area.
Although this second element is akin to the type of conduct which justifies a temporary detention of a person by the police based on conduct which threatens public safety and amounts to an imminent breach of the peace, as authorized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), see State v. Ecker, supra at 109, 110, it is plain that a much higher degree of proof is involved. It is not enough to establish, as in Terry, a founded or reasonable suspicion of the above-described conduct, for such a showing merely justifies a temporary detention under the Fourth Amendment and nothing else. It does not justify an arrest because that requires a probable cause showing under the Fourth Amendment; and it does not justify a conviction as that requires proof beyond a reasonable doubt. Compare Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It was thus held in Boal v. State, 368 So.2d 71 (Fla. 2d DCA 1979) that, although the circumstances justified a temporary detention of the defendant under Terry, the evidence was insufficient to convict the defendant of loitering and prowling as the requisite degree of proof beyond a reasonable doubt, as to the alarm or concern created, was lacking. In order to establish the second element, then, it must be shown beyond a reasonable doubt that the defendant's conduct warranted the above-described alarm or concern  which obviously means a much greater degree of alarm or concern than would justify only a temporary detention or arrest. In sum, while this element is akin to Terry-type conduct when applied to future-type crimes against persons or property, it requires a much greater showing of alarm or concern. The statute in question does not and, indeed, constitutionally could not criminalize Terry-type conduct, which under the Fourth Amendment authorizes only temporary detentions, not arrests or convictions for crime.
In this connection, it has been held that Florida courts must be careful not to apply this statute, including this second element, as a "catchall." "The statute is not to be used as a `catch-all' provision [w]hereby citizens may be detained by police and charged by prosecutors when there is an insufficient basis to sustain a conviction on some other charge." B.A.A. v. State, supra at 306. Stated differently, the statute must not be applied so as to criminalize conduct which amounts to nothing more than a basis to temporarily detain or arrest a person for committing some other crime. If it is so applied, it plainly runs afoul of the Fourth Amendment and constitutes an unconstitutional application thereof which the courts must zealously avoid. The statute, although constitutional, plainly reaches the outer limits of constitutionality and must be applied by the courts with special care so as to avoid unconstitutional applications. State v. Ecker, supra; Model Penal Code § 250.6, supra.
It should also be noted that the showing necessary to justify an arrest for loitering and prowling, compare, e.g., White v. State, 458 So.2d 1150 (Fla. 1st DCA 1984); State v. Jones, 454 So.2d 774 (Fla. 3d DCA 1984); T.J. v. State, 452 So.2d 107 (Fla. 3d DCA 1984); State v. Coron, 411 So.2d 237 (Fla. 3d DCA 1982); A.L.B. v. State, 399 So.2d 483 (Fla. 3d DCA 1981); State v. Caballero, 396 So.2d 1210 (Fla. 3d DCA 1981); State v. Spurling, 385 So.2d 672 (Fla. 2d DCA), pet. for review denied, 392 So.2d 1379 (Fla. 1980), is not the same showing required to sustain a conviction for loitering or prowling. A probable cause showing is all that is necessary to justify a loitering or prowling arrest; proof beyond a reasonable doubt, on the other hand, is required to sustain a loitering and prowling conviction.
*154 Under Section 856.021(2), Florida Statutes (1983), circumstances which may be considered as tending to establish the second element, although none are conclusive, include: the defendant takes flight upon the appearance of a law enforcement officer, the defendant attempts to conceal himself or any object, or the defendant refuses to identify himself "[u]nder circumstances where the public safety is threatened." State v. Ecker, supra at 109. As a corollary, the contrary circumstances may be considered as tending to negate the second element: the defendant does not take flight upon the appearance of a law enforcement officer, the defendant makes no effort to conceal himself or any object, or the defendant properly identifies himself. It should be noted, however, that the failure of a defendant to explain his presence and conduct cannot constitutionally be considered as a circumstance tending to establish this second element. State v. Ecker, supra at 110.
Finally, it must also be shown, as part of the second element, that the police followed certain procedures prior to arresting the defendant; no one can be convicted under the statute if these arrest procedures are not followed. Unless flight by the defendant or other circumstances make it impractical, the law enforcement officer prior to arrest must afford the defendant an opportunity to dispel any justifiable alarm or immediate concern for the safety of persons or property in the vicinity by requesting him to identify himself and explain his presence and conduct. § 856.021(2), Fla. Stat. (1983). The defendant, however, is not required to explain his presence or conduct and his failure to do so cannot be used against him, State v. Ecker, supra at 110; on the other hand, the defendant's refusal to identify himself  although not conclusive in establishing this second element of the crime  may be used, as stated above, as one circumstance tending to establish said element. Watts v. State, 463 So.2d 205 (Fla. 1985).

III
Turning to the instant case, we have no trouble in concluding that neither of the two elements of loitering and prowling was established in this case sufficient to sustain a delinquency adjudication below. The trial court erred in denying a defense motion for judgment of acquittal at trial.
First, the evidence below fails to establish beyond a reasonable doubt that the respondent loitered and prowled in a place, at a time, or in a manner not usual for law-abiding people. This is so because the respondent's otherwise aberrant and suspicious criminal conduct pointed exclusively to a past, already completed crime of auto theft, and in no way pointed to immediate future criminal activity. The van, which the respondent and his adult companion were discovered in front of in the alley, had already been stolen earlier that day at an entirely different location. The respondent's activities on the day in question were related entirely to this already stolen van and in no way constituted a threat of immediate future criminal activity. In sum, the respondent here did not engage in incipient criminal behavior; he engaged exclusively in suspicious after-the-fact criminal behavior which solely indicated involvement in an already completed, past, substantive criminal act. The police did not act to prevent crime before it occurred; they acted to apprehend a suspect as to an already completed crime. The first element of loitering and prowling is therefore lacking in this case.
Second, the evidence below fails to establish beyond a reasonable doubt that the respondent loitered and prowled under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the area. As previously indicated, the defendant's activities on the day in question related entirely to an already completed, past criminal act of auto theft. The conduct in no way posed a threat of future criminal activity and, perforce, could not have warranted the requisite alarm or concern which *155 is a part of this element. The fact that the respondent ran upon seeing the police, although constituting some evidence of this element, does not in itself establish the subject element under the circumstances of this case.
True, the police, without doubt, had a reasonable suspicion to temporarily detain the respondent under Terry v. Ohio for auto theft; they may even have had probable cause to arrest him for auto theft. The state, however, may not take this evidence, which justifies only a temporary detention or at best an arrest under the Fourth Amendment, and convert it into sufficient evidence to convict and imprison for loitering and prowling without violating the respondent's due process and Fourth Amendment rights. Loitering and prowling is not a catchall crime whereby a person may be charged and convicted by prosecutors when there is an insufficient basis to sustain a conviction on some other charge. The respondent was never charged for the auto theft herein presumably because there was insufficient evidence to convict on this crime. The state may not now take the reasonable suspicion or probable cause to temporarily detain or arrest the respondent for auto theft and convert it into a catchall conviction for loitering and prowling.
One final point. We do not reach the claim that the arresting officer did not, prior to the arrest, give the respondent an opportunity to dispel any justifiable alarm or immediate concern for the safety of persons or property in the vicinity due to the language impasse between the arresting officers and the respondent. There was no alarm or concern to be dispelled, in our view, so that an opportunity to dispel same did not come into play in this case.
The final adjudication of delinquency under review is reversed and the cause is remanded to the trial court with directions to discharge the respondent.
Reversed and remanded.