724 So.2d 1243 (1999)
E.C., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 97-4366.
District Court of Appeal of Florida, Fourth District.
January 27, 1999.
*1244 Richard L. Jorandby, Public Defender, and Bernard S. Fernandez, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
STONE, C.J.
We reverse Appellant's conviction for loitering and prowling. The trial court erred by denying the defense motion for judgment of acquittal.
The incident in question occurred on a summer night, around 11:00 p.m. While patrolling, Sergeant Robertson observed three young males walking along a sidewalk by a strip center. Soon thereafter, Robertson saw the juveniles again at the same location. At the time, several of the stores in the center were open for business and traffic flowed steadily into and out of the parking lot.
The sergeant took up surveillance and watched the juveniles walk back and forth in front of the strip center about eight times. On several occasions, they "peeked" around the corner of one store to view a convenience store parking lot next door and walked through the strip center parking lot and into an alley behind it. The juveniles moved back and forth in a group, talking. One would occasionally separate from the group to walk into the convenience store parking lot, but would walk back out when a car entered. They then walked across the street in front of a parking garage and sat on the curb. Robertson observed them for a period of thirty-five to forty minutes. Robertson did not believe their conduct was "normal." He believed they were going to commit some type of criminal activity in the area.
The juveniles eventually walked over to the parking lot of a regional mall across the street from the strip center. At that point, Robertson, assisted by other officers, stopped them and ordered them to lay down on the ground. When E.C. refused, one of the officers approached him and patted him down. In E.C.'s right rear pocket, hidden by his shirt tail, the officer found a flat-head screwdriver. The officer knew the screwdriver to be of the type used to steal cars. He asked E.C. why he was in the area at that time of night, and E.C. told him he was waiting for a ride. However, E.C. could not tell the officer by whom he was getting a ride or to where he was going.
Robertson testified that he gave E.C. a chance to explain the reasons for his actions. All three of the juveniles gave the same statement, that they had been at the movies at the mall, they were going home to Pahokee, and they were waiting for a ride. None of the juveniles could tell him how they were getting there or who was giving them a ride. E.C. also informed Robertson that he had found the screwdriver at the movies.
E.C. testified that they took a bus from Pahokee to West Palm Beach at 4:00 p.m. to go to the movies and saw a 7:00 p.m. feature. Afterwards, they discovered that the last bus returning to Pahokee had left. At first, he and his friends stood outside of the movie theater trying to find someone they knew from Pahokee that could give them a ride. When they were unsuccessful, they walked over to the strip center and the convenience store to see if anyone they knew might be there. They walked back and forth for the purpose of finding friends who could give them a ride.
To prove a charge of loitering and prowling, under section 856.021, Florida Statutes, the state must prove that (1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals; and (2) the loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. See State v. Ecker, 311 So.2d 104, 106 (Fla.1975). With respect to the first element, the state must establish that the defendant engaged in incipient criminal behavior which law-abiding people do not usually engage in due to the time, place, or manner of the conduct involved. See D.A. v. State, 471 So.2d 147, 151 (Fla. 3d DCA 1985). The gist of this element is conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive crime and which must be alarming in nature, pointing toward an imminent breach of the peace or threat to public safety. *1245 Id. The statute is not directed at mere idling. Ecker, 311 So.2d at 110; D.A., 471 So.2d at 152.
We recognize that the conduct of E.C. and his companions was certainly suspicious and arguably satisfies the first prong of the test. However, the evidence here does not satisfy the second prong. In Von Goff v. State, 687 So.2d 926 (Fla. 2d DCA 1997), the court reversed a conviction for loitering and prowling where an officer observed the defendant sitting near the dumpsters next to an open convenience store in a high-crime area. Id. at 927. The court held that, even assuming that sitting near an open convenience store constituted loitering in a manner unusual for law-abiding citizens, the state presented no evidence indicating that the defendant's actions created an imminent threat to the safety of person or property in the area. Id. at 928.
Similarly, in L.C. v. State, 516 So.2d 95 (Fla. 3d DCA 1987), the court reversed a conviction for loitering and prowling where an officer observed the defendant riding a bike around 10:10 p.m. into a shopping center parking lot where a number of purse snatchings had occurred. Some of the stores in the shopping center had closed. The defendant rode up and down three times looking into store windows, stopped and pulled or pushed on the door of a closed department store, and rode his bike out of the center. He proceeded down the road twenty-five yards to an area near an apartment building and a convenience store, placed his bike against a fence, and began walking towards a brightly lit area. When the police stopped him, the defendant told them that he was going to buy cigarettes for his mother and that he was going to see his uncle, who lived in that area, to get some money. Id. at 96. The court held that even assuming that the first prong of the test was satisfied, the state presented no evidence that the circumstances were such as to elicit a justified alarm or immediate concern that L.C.'s behavior amounted to an imminent threat to the safety of persons or property. Id. at 96-97.
In R.D.W. v. State, 659 So.2d 1193 (Fla. 2d DCA 1995), the court reversed a conviction for loitering and prowling where the police officers observed the defendant and two other boys riding their bikes around 9:20 p.m. in an area with open businesses where people were coming and going. The boys were wearing jackets although it was a warm August night. They rode their bikes through two store parking lots and looked around. They rode slowly through a third parking lot and went to the rear of the store where they hid their bikes in the bushes. They removed their jackets, placed them with the bikes, and walked into the parking lot. They then stood together as they scanned the lot for a few minutes, watching cars and people. Finally, they returned to their bikes, put their jackets back on, and rode away, at which point the police stopped them. Id. at 1193. The court held that the evidence was insufficient to support the charge because nothing about the defendant or his companions' actions indicated that a breach of the peace was imminent or that public safety was threatened. Id. at 1194.
In light of these cases, we conclude that nothing about E.C.'s or the others' behavior was sufficiently alarming to raise an immediate concern for the safety of the persons or property in the vicinity. See also State v. Freeman, 542 So.2d 483 (Fla. 2d DCA 1989) (reversing where the officer observed the defendant standing on a street corner in a group adjacent to a grocery store where drug dealing frequently occurred); T.T. v. State, 572 So.2d 21 (Fla. 4th DCA 1990) (reversing where the officer observed the defendant in a parked car behind a closed business for about five minutes and saw the car drive away at a slow speed without headlights).
We also recognize that the possession of the twelve-inch screwdriver gives support to a suspicion of imminent criminal activity after the fact. However, the offense of loitering and prowling must be completed prior to any police action. See R.D.W., 659 So.2d at 1194; E.B. v. State, 537 So.2d 148, 150 (Fla. 2d DCA 1989) (tools found on juveniles after the police stopped them for loitering and prowling did not give rise to a suspicion of imminent criminal activity).
Therefore, we conclude that the trial court erred in denying the motion for judgment of acquittal and remand for discharge of Appellant. We do not address E.C.'s additional *1246 argument that the explanation he gave to the police was adequate to dispel any alarm, as this issue is now moot.
POLEN and STEVENSON, JJ., concur.