833 So.2d 267 (2002)
S.P., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-1553.
District Court of Appeal of Florida, Third District.
December 26, 2002.
*268 Bennett H. Brummer, Public Defender and Andrew Stanton, Assistant Public Defender, for appellant.
Richard E. Doran, Attorney General and Richard L. Polin, Assistant Attorney General and Sarah B. Belter and Joseph Brophy, Certified Legal Interns, for appellee.
Before SCHWARTZ, C.J., COPE and GODERICH, JJ.
SCHWARTZ, Chief Judge.
This is an appeal from an adjudication of delinquency based upon findings that the seventeen year-old male respondent, S.P., was guilty of loitering and prowling and resisting the arrest for that offense without violence. We reverse.

I.
Under the decided cases, the behavior which formed the basis of the charge, which consisted of the boy's being seen by the arresting officer "standing over by [a cemetery] wall, by the bushes, crouched down by the bushes" near several vehicles visiting the cemetery at two o'clock on Christmas Day afternoon,[1] was insufficient to establish the elements of loitering and prowling as required by section 856.021, Florida Statutes (2001). State v. Ecker, 311 So.2d 104 (Fla.1975), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975); Gonzalez v. State, 828 So.2d 496 (Fla. 3d DCA 2002); T.W. v. State, 675 So.2d 1018 (Fla. 2d DCA 1996); L.C. v. State, 516 So.2d 95 (Fla. 3d DCA 1987); D.A. v. State, 471 So.2d 147 (Fla. 3d DCA 1985); L.S. v. State, 449 So.2d 1305 (Fla. 3d DCA 1984). Simply stated, his actions, perhaps even more clearly than in such cases as D.A. and L.S., did not amount either (a) to "aberrant and suspicious criminal conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive crime," or (b) "point toward the commission or attempted commission of a crime against a person or a crime against certain property in the vicinity." D.A., 471 So.2d at 151, 152.

II.
Since the arrest for loitering and prowling was therefore invalid the charge of resisting that arrest likewise cannot stand. D.A. v. State, 636 So.2d 863 (Fla. 3d DCA 1994); Lee v. State, 368 So.2d 395 (Fla. 3d DCA 1979), cert. denied, 378 So.2d 349 (Fla.1979).
For these reasons the adjudications under review are reversed with directions to dismiss the proceeding.
Reversed and remanded with directions.
GODERICH, J., concurs.
COPE, J. (dissenting).
The adjudication of delinquency should be affirmed.
The arresting officer testified:

*269 A. I was at a cemetery visiting my grandfather's grave with my mom and my dad. They were in different cars, and I was in my car. I was in an off-duty capacity. I was in my personal van, my personal truck.
When we came out to 18th Avenue, and there was a car in front of me, and the car wasn't going. There was no traffic, so normally you look to see whether the person is not paying attention to their driving.
I see the driver and the passengers were looking over the left. I look over to the left. I see the Defendant standing over by the wall, by the bushes, crouched down by the bushes.
When I looked over there, he stood up and he walked across, right across the street.
Tr. 5-6.
As stated in footnote one of the majority opinion, S.P. crossed the street, walked through a gas station, and then returned to the original location. The officer testified:
He walked over to the bushes, and he crouched down in the bushes as vehicles were coming into the cemetery. He was crouching down in the bushes.
At that point, I got out of my car. I had my wallet in my hand. I walked over to the bushes where he was. I shoved my badge and ID in his face, and I grabbed him, and told him to stand up.
Tr. 7.
The arresting officer flagged down a uniformed officer in a patrol car.
THE WITNESS: When the other officer drove up, he had his hands on the car. I asked for ID. He didn't have ID, but when he started talking, he had something in his mouth. I couldn't tell what it was.
I ordered him to open his mouth. Whatever it was, he swallowed. I have no idea what it was that he had in his mouth at the time. At that point, he was Mirandized with [Officer] Rob Williams there making sure that he wasn't going to run.
I Mirandized him. He refused any statements. Based on the totality of the circumstances, and the fact that he didn't dispel my alarm, I arrested him for loitering and prowling, and resisting. Rob Williams transported him to the station for me.
. . . .
Q. What were you concerned for?
A. I was concerned for the people that were visiting in the cemetery. Traditionally, what was taking place is that a lot of people come visit their relatives in the cemetery, and usually the windows are down because they walk right over to the grave.
The car could get burglarized, or people get robbed while they're in the cemetery, specifically during the holidays, like Christmas and New Year's, et cetera, Memorial Day. And there's a lot of people visiting the cemetery.
Tr. 10-11, 17-18.
The loitering or prowling statute states:
(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to *270 conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
§ 856.021, Fla. Stat. (2001) (emphasis added).
It must be proved that "the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals... [and that] such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." State v. Ecker, 311 So.2d 104, 106 (Fla. 1975).
A commonsense reading of the statute supports the adjudication of delinquency in this case. S.P. was crouching in the bushes close to cars which were driving in and out of the cemetery. The officer had the entirely reasonable concern that S.P. was concealing himself close to the vehicles so that he could steal from them.
The majority opinion relies on D.A. v. State, 471 So.2d 147 (Fla. 3d DCA 1985), but the logic of that case supports affirmance in this one. The court in D.A. stated:
As to the first element, it must be established that the defendant engaged in incipient criminal behavior which law-abiding people do not usually engage in due to the time, place, or manner of the conduct involved. The gist of this element is aberrant and suspicious criminal conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive crime. It does not, however, involve behavior which constitutes no threat of immediate, future criminal activity. See Model Penal Code § 250.6 comment at 388-91 (1980).
In this connection, the statute is forward-looking, rather than backward-looking in nature. Its purpose is to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act....
. . . .
As to the second element, which is the heart of the offense, it must be established that the defendant engaged in conduct that warranted a justifiable or reasonable alarm or immediate concern for the safety of persons or property in the vicinity. The gist of this element is that the aberrant or incipient criminal behavior, stated above, must be alarming in nature; that is, it must threaten the physical safety of persons in the area or the safety of property in the area. It is not enough that the subject criminal behavior point towards the commission or attempted commission of any type of substantive crime; it must point toward the commission or attempted commission of a crime against a person or a crime against certain property in the vicinity. It must, in a word, amount to an imminent breach of the peace or an imminent threat to public safety. State v. Ecker, supra at 109, *271 110; Model Penal Code § 250.6 comment, supra.

D.A., 471 So.2d at 151-52.
There are reported cases regarding juveniles who are located in bushes, but those cases are clearly distinguishable from the present one. The D.A. court said:
[I]n In re O.W., 423 So.2d 1029 (Fla. 4th DCA 1982), where a loitering and prowling adjudication was reversed, the police observed the juvenile, a 13-year-old boy, running with two companions from some bushes across a vacant field during school hours on a school day. When stopped, the boys stated they were skipping school. The court found, in effect, that the first element of the offense had not been established because climbing trees, playing in bushes, and running through woods and fields were not unusual activities for a 13-year-old boy; plainly, the juvenile was skipping school and his activity in no way pointed toward immediate, future criminal conduct. In L.S. v. State, 449 So.2d 1305 (Fla. 3d DCA 1984), this court, citing O.W., supra, reached a similar result where the juvenile, a 14-year-old boy, was observed crouching in the bushes near an expressway exit. A loitering and prowling adjudication was reversed on the basis that such playful activity was plainly not unusual for a 14-year-old boy and did not point to future criminal activity. Moreover, neither the fact that past drug transactions had taken place in the field through which O.W. ran, nor that past robberies and purse snatches had taken place at the expressway exit where L.S. was observed, changed the results in these cases because, if it had, children living in high crime areas would be precluded from playing and frolicking in many parts of their neighborhoods. Also in V.S. v. State, 446 So.2d 232 (Fla. 3d DCA 1984), this court reversed a loitering and prowling adjudication involving a juvenile who was stopped on the street based solely on a police "hunch." Being out on the street, in itself, is plainly harmless behavior and, without more, poses no threat of immediate future criminal activity.
D.A., 471 So.2d at 152.
The State correctly points out that in the reported cases, the juveniles were younger in agethirteen or fourteen years oldand playing in a group in an area where such activity could reasonably be accomplished. In the present case, by contrast, this is an older juvenileage seventeenwho is not playing in a group but instead is hiding himself, alone, in bushes in close proximity to persons arriving and departing through the cemetery entrance. The officer's immediate concern for the safety of the persons or property of the cemetery visitors was entirely reasonable, and S.P. never dispelled that concern.
The adjudication of delinquency should be affirmed.
NOTES
[1] The officer described what the respondent did thereafter:

When I looked over there, he stood up, and he walked across, right across the street. Across 18th Avenue, there's a 7-11.
* * *
I saw him walk straight across. He started walking around the gas island. He did two big circles around the gas island. This car left. I then went, because of the suspicious activity, I went, and I parked right in front of the 7-11.
* * *
At that point, when all the cars left, he walked over toThere's a triangle-shaped median that has bushes in it in the center, right in front of the cemetery. He walked over to the bushes, and he crouched down in the bushes as vehicles were coming into the cemetery. He was crouching down in the bushes.