467 So.2d 301 (1985)
STATE of Florida, Petitioner,
v.
Robert Earl DILYERD, Respondent.
No. 64956.
Supreme Court of Florida.
April 4, 1985.
*302 Jim Smith, Atty. Gen., and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for petitioner.
James B. Gibson, Public Defender and David A. Henson, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for respondent.
SHAW, Justice.
This cause is before us on a petition to review a decision of the Fifth District Court of Appeal reported as Dilyerd v. State, 444 So.2d 577 (Fla. 5th DCA 1984). We have jurisdiction because of direct and express conflict with State v. Brown, 395 So.2d 1202 (Fla. 3d DCA), review denied, 407 So.2d 1102 (Fla. 1981). Art. V, § 3(b)(3), Fla. Const.
The incident with which we are concerned took place in an orange grove on the night of 5 September 1981. The owners of the grove were redeveloping the area into private housing and had been bothered by teenagers using the grove for drinking parties. The police had been asked to check the area and remove trespassers. On the night in question, a deputy sheriff noted a car parked in the area with two male occupants, one of whom was sitting in the driver's seat. When the deputy shined his spotlight into the car, the passenger leaned forward and appeared to do something with his hands on the floorboard of the car. The deputy summoned a back-up deputy and approached the car from the passenger's side. He obtained identification from the occupants and waited for the back-up deputy, who arrived within a minute. When the back-up deputy arrived, the occupants were ordered from the car. It is not clear whether the occupants were subjected to a pat-down search: the passenger occupant testified at the suppression hearing that they were not; the deputy testified he had no present recollection because of the passage of time, but that they probably were because it was his standard procedure to do so. In any event, the deputy searched under the passenger seat while the back-up deputy watched the two males. At no time did the officers draw their weapons. The deputy discovered a vial of cocaine under the passenger's seat and, after the arrests, a later search of the trunk revealed marijuana.[*]
*303 After charges were filed, respondent moved to suppress the cocaine on the ground the search and seizure were illegal because there was no warrant or probable cause to believe a crime had been committed, and the search could not be justified as incident to the officer's safety because both occupants had been removed from the vehicle. The trial court conducted a hearing at which the deputy testified that he conducted the search in order to determine if the passenger had concealed a weapon on the floorboard or under the seat. The deputy also testified that initially he had not intended to arrest the trespassers, only to warn them off. The trial judge denied the motion to suppress. Respondent then pled nolo contendere, reserving the right to appeal the denial of the motion to suppress.
On appeal the district court reversed the denial of the motion to suppress on the ground that the search violated the provisions of the fourth amendment, United States Constitution and article I, section 12 of the Florida Constitution. In doing so, the district court concluded that the Florida Stop and Frisk Law, section 901.151, Florida Statutes (1981), was not applicable to cars, only persons, and was certainly not applicable here because there was no probable cause to believe that either occupant had a weapon, and that "[f]urtive stuffing of unknown objects under the seat of a car may make one, curious or even suspicious ... but it does not give the police a right to search based on probable cause." Dilyerd, 444 So.2d at 578-79. The district court also concluded that the safety of the officers was secured when the two occupants moved outside the car and away from the supposed danger zone. In reaching its decision, the district court characterized the search as a hunting expedition on the basis that the officer's assertion that the search was to protect the officers' safety rang hollow.
In Hetland v. State, 387 So.2d 963 (Fla. 1980), we commended and adopted the opinion of the district court in State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979). In that opinion Judge Danahy, writing for the court, concluded "that the Florida Stop and Frisk Law was not intended to, and does not, impose any higher standard than that of the Fourth Amendment." Id. at 836. We agreed then and, if anything, agree even more so today in view of the 1982 amendment to article I, section 12 of the Florida Constitution which specifies:
This right [against unreasonable searches and seizures] shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
The United States Supreme Court has recently issued a definitive statement on stop and frisk law, as applied to motor vehicles, Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In Long the Court reviewed Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny and reached numerous conclusions and holdings which are directly on point here:
[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers... .
... [S]uspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed... .
Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses *304 a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See Terry, 392 U.S., at 21, 88 S.Ct., at 1880. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id., at 27, 88 S.Ct., at 1883. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If, while conducting a legitimate Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978); Texas v. Brown [460 U.S. 730, 739, 744] 103 S.Ct. 1535, 1541, 1544, 75 L.Ed.2d 502 (1983) (plurality opinion by Rehnquist, J., and opinion concurring in the judgment by Powell, J.).
* * * * * *
... [T]he balancing required by Terry clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.
Long, 103 S.Ct. at 3479-81 (footnote omitted). We note also that the Court specifically rejected the reasoning of the Michigan Court and the district court below that removal of the suspect from the vehicle removed the danger to the police.
Applying Long to the facts and circumstances at hand, there are two determinative questions: (1) was the stop itself justified and, (2) did the deputy possess a reasonable belief based on specific and articulable facts, along with rational inferences, which justified his belief that the occupants of the car were dangerous and might gain control of weapons within the car. The answer to the first question is an uncontroverted yes. The occupants were trespassers and the police had been alerted by the property owners to remove trespassers. The answer to the second question is less certain but still clear. The officer testified before a judge, who had the opportunity to observe his demeanor, that he observed a furtive movement by the passenger which lead him to fear that there might be a weapon on the floorboard or under the passenger seat. We have no contradictory testimony. Indeed, the district court conceded there was a furtive movement. It is also uncontroverted that the officer summoned a back-up police officer and did not remove the occupants from the car until the back-up officer arrived.
Although the results of a search cannot be used to justify the search, we are constrained to note the factual circumstances: two seventeen-year-old trespassers were parked at night in an orange grove with cocaine in the front seat area and marijuana in the trunk when a police officer drove up and spotlighted their car. Under these circumstances, it is reasonable to believe the uncontradicted testimony of the officer that the passenger made a furtive movement which the officer thought was an attempt to conceal a weapon. The trial judge who conducted the suppression hearing and heard the testimony of the witnesses and observed their demeanor thought so. Absent a clear showing of an error of law or fact, the trial court's finding is clothed with a presumption of correctness. McDaniel v. Wainwright, 226 So.2d 856 (Fla. 1st DCA 1969). As against this, we have the arguments of respondent that the actions of the police in failing to pat-down the suspects after removing them from the car, failing to check for outstanding warrants or a stolen car report before searching the car, and failing to reach a decision on whether to arrest the suspects before searching the car, evidenced a lack of fear *305 for their safety. We are not prepared to prescribe as a matter of law a predetermined series of acts that the police must follow in conducting an investigative stop and frisk of motor vehicles. We are not told what clothes the defendants were wearing which might have concealed weapons nor are we told any other facts which would demonstrate as a matter of law that a pat-down search was a prerequisite safety precaution to the vehicular search. On the question of checking for warrants and stolen car reports, such action is of a considerably lower priority than checking for hidden weapons and would be more appropriately done after the safety of officers is assured. As to the intent to arrest, it is clear from Long that where a justifiable stop places an officer's safety in question, vehicular searches are not based on probable cause or intent to make an arrest. Police officers may conduct a limited search of the passenger compartment of a car "if the police officer possesses a reasonable belief based on `specific and articulable facts which, taken together with the natural inferences from these facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Long, 103 S.Ct. at 3480. Respondent also urges, and the district court agreed, that the removal of the occupants from the car removed any danger to the safety of the officers because the occupants could no longer reach the weapons. This argument has been rejected by Long.
In summary, we have the uncontradicted testimony of an officer, who came upon two suspected trespassers at night in an orange grove, that one of the suspects made a movement which the officer feared was made to conceal a weapon. These are specific and articulable facts which would reasonably justify the officer's fears. The trial judge, who observed the officer's demeanor, believed the testimony. We are unprepared to simply disbelieve the testimony of the officer, based on a cold record, and substitute our judgment for that of the trial court. The decision of the district court is quashed and the case remanded for proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and ALDERMAN and EHRLICH, JJ., concur.
ADKINS, OVERTON and McDONALD, JJ., dissent.
NOTES
[*] The state agreed to nolle pros charges involving marijuana.