## IN THE INTEREST OF: LJA, a Child
### Case No. 86-3708-CJ
Fifteenth Judicial Circuit, Palm Beach County

August 25, 1986

### APPEARANCES OF COUNSEL

**Sheree Cunningham,** Assistant State Attorney, Office of the State Attorney, for the state.

**Mitchell, Hanswer & Schwartz** for defendant.

### OPINION OF THE COURT

JAMES T. CARLISLE, Circuit Judge.

The issue in this case is whether a search of the passenger compartment of the defendant's car violated the Fourth Amendment.

On May 24, 1986, Deputy Sheriff Crerand observed defendant run a red light. He pursued him and made a routine traffic stop. Deputy Crerand observed defendant lean forward and reach down in a manner which he testified was consistent with retrieving or concealing an object near the floor.

Deputy Crerand testified that among other things he suspected the item might have been an open container of alcoholic beverage, which would be in violation of the County's open container law. Deputy Crerand also considered the possibility that defendant was concealing contraband or arming himself with a weapon. Deputy Crerand did not call for a back-up officer because doing so was contrary to Sheriff Department policy regarding traffic stops.

The defendant was required to stand in front of the vehicle. Deputy Crerand observed a lump under the floor mat which he testified looked similar to a bump under the floor mat of his own automobile, caused by a short barrel revolver which he secreted there. He lifted the floor mat and found a plastic bag containing a white powder. He then looked under the seat and found another plastic bag also containing a white powder. In looking under the seat he lost sight of the defendant for a few seconds. Subsequent search of the vehicle revealed another bag of white powder, a marijuana cigarette, a small amount of suspected hashish, and currency in the amount of $9,992.00. At some point during the search Deputy Sheriff Combs arrived on the scene. During the search defendant was required to sit on the curb but was not handcuffed. After the interior of the car was examined, defendant was handcuffed and the search of his person revealed $291.00.

Defendant contends these facts do not justify a search of the automobile because the stop was for a traffic infraction and Deputy Crerand's failure to handcuff the defendant, the lack of a back-up officer, and taking his eyes off the defendant indicate he did not apprehend a threat from the defendant nor fear that the defendant would attempt to escape or destroy evidence.

This case is remarkably similar to *State v. Dilyerd*, 467 So. 2d 301 (Fla. 1985). There the owners of an orange grove had asked deputies to be on the look out for trespassers who used the grove for drinking parties. A deputy sheriff noted a car parked in the orange grove with two male occupants. When he shined his spot light in the car the passenger leaned forward and appeared to do something with his hands on the floor board. The deputy summoned a back-up deputy and approached the car from the passenger's side. When the back-up deputy arrived the occupants were ordered from the car. The passenger

132

testified they were not subjected to a pat-down search. The deputy could not remember but testified that they probably were because it was his standard procedure to do so. The deputy searched under the passenger seat while the back-up deputy watched the two males. At no time did the officers draw their weapons. Cocaine was found under the passenger seat. Dilyerd argued that the failure of the officers to do a pat-down after removing them from the car, failure to check for outstanding warrants or stolen car reports before searching the car, and failure to reach a decision on whether to arrest the suspects before searching the car, evidenced a lack of fear for their safety and the search of the passenger compartment could not be justified as incident to the officer's safety because both occupants had been removed from the vehicle.

In approving the search the Supreme Court stated: "We are not prepared to prescribe as a matter of law a pre-determined series of acts that the police must follow in conducting an investigative stop and frisk of the motor vehicle." The Court went on to hold that the movement of the passenger which the officer felt was made to conceal a weapon was a sufficient specific and articulable fact which would justify a search of the interior of the car.

Defendant pointed out some differences between this case. For example, a back-up deputy was summoned in *Dilyerd* and the entire search was conducted while the back-up deputy watched the two males. These differences can be dismissed as an attempt to "prescribe a pre-determined series of acts that the police must follow in conducting an investigative stop and frisk of motor vehicles."

*State v. Brown*, 395 So.2d 1201 (Fla. 3d DCA 1981), involved a stop for suspicion of auto theft and driving with an expired license plate. Brown and his passenger made furtive hand movements under the car seat during the subsequent police investigation after the stop. The Third District Court of Appeal said the hand movements constituted articulable suspicion that the defendants were armed and dangerous, which in turn justified the police in searching the car seat after the police had ordered both defendants out of the car. Having properly stopped defendant for a traffic infraction and observed him do an act consistent with hiding evidence or obtaining a weapon, the instant search was valid.

Defendant also notes the stop in the instant case was for a traffic infraction and the stop in *Dilyerd* was for the criminal act of trespassing. This is a distinction without a difference. In *New York v. Belton*, 453 US 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, a police officer stopped

a vehicle for speeding. When he smelled burnt marijuana and saw an envelope on the floor of the car marked 'Supergold' he arrested the occupants for marijuana. He patted them down and directed them to four separate areas of the New York throughway, so they could not touch each other. A search of the vehicle revealed a black leather jacket belonging to Belton. The officer unzipped one of the pockets of the jacket and discovered cocaine. In reaching the holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may as a contemporaneous incident of that arrest search the passenger compartment of that automobile." 69 L. Ed. at 775. In reaching this decision the Court harkened back to its holding in *Chimel v. California*, 395 US 752, 23 L. Ed 2d 685, 89 S. Ct. 2034, that:

> "A lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediate surrounding area. Such searches have long been considered valid because of the need to remove any weapons that the arrestee might seek to use in order to resist arrest or effect his escape and the need to prevent concealment or destruction of evidence." 69 L. Ed 2d 768, at 773.

The Court emphasized the principal that "the scope of such a search must be strictly tied to and justified by the circumstances which rendered its initiation permissible." Supra at 773, L. Ed. 2d.

It is easy to enunciate such principals but difficult to apply in specific cases. A single familiar standard was essential to guide police officers who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront. Police officers acting in the field did not have the time nor the training to reach decisions as to the permissible scope of a search when required and to adhere to a highly sophisticated set of rules qualified by all sorts of 'ifs', 'ands' and 'buts', and requiring the drawing of subtle nuances and hairline distinctions. LeFave, *Case by Case Adjudication Versus Standardized Procedures: The Robinson Dilemma*, 1974 S. Ct. Review, 127, at 141.

Thus, the United States Supreme Court laid down the bright line rule of *Belton* that the permissible scope of a lawful custodial arrest of the occupant of an automobile includes search of the passenger compartment as well as any containers found within the passenger compartment.

The 1982 amendment to Article 1, Section 12, of the Florida Constitution requires the right against unreasonable searches and

134

seizures be construed in conformity with the Fourth Amendment, as interpreted by the United States Supreme Court. Florida courts have applied the "straightforward, workable" rule of *Belton* even to the extent of approving the search of a vehicle when the arrest took place twenty to thirty feet from the door of the vehicle and about three minutes after the occupant had entered the building of a service station to make a phone call *State v. McLendon*, 11 FLW 1406.

*New York v. Class*, 84-1181 Feb. 25, 1986, 38 Cr. L. 3128, involved a stop for a cracked windshield and speeding. There was no reason for the officer to suspect other activity beside the traffic infraction. Class exited the vehicle. The Vehicle Identification Number (VIN) number was obscured by some papers on the dash board. In moving the papers to view the VIN number, the officer observed the handle of a gun protruding from beneath the driver's seat. In holding the search did not violate the Fourth Amendment, the United States Supreme Court noted that: "Any other conclusion would expose police officers to potentially grave risks..."

In terms of danger to police officers there is no qualitative difference between a person charged with a non-criminal traffic infraction or one charged with other criminal activity. Indeed the danger to the officer making a simple non-criminal traffic stop is significantly increased if the motorist believes the stop is for other criminal activity. For example, an officer might well intend to stop a motorist for speeding, unaware that the motorist is fleeing the scene of an armed robbery. The officer would reasonably believe he has stopped a speeder. The robber believes he is in danger of being apprehended for the robbery.

In deciding that once a motor vehicle has been lawfully stopped for a traffic violation police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures, the Court in *Pennsylvania v. Mimms*, (1977) 434 US 106, 54 L. Ed 331, 98 S. Ct. 330, stated as follows:

"And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. 'According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings—Tactical Evaluation, 54 J Crim LC & PS 93 (1963). —' Adams v. Williams, 407 US 143, 148 n 3, 32 L. Ed 2d 612, 92 S. Ct. 1921 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic

violations necessarily involve less danger to officers than other types of confrontations. United States v. Robinson, 414 US 218, 234 38 L. Ed 2d 427, 94 S. Ct. 467, 66 Ohio Ops 2d 202 (1973). Indeed, it appears 'that a significant percentage of murders of police officers occurs when the officers are making traffic stops' " Id., at 234 n 5, 38 L. Ed 2d 427, 94 S. Ct. 467, 66 Ohio Ops 2d 202, L. Ed at 336, 337.

Warrantless searches incident to an arrest are authorized in order to, among other things, prevent injury to the arresting officer. The difficulty of applying the subtle nuances and hairline distinctions of whether the "facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Terry v. Ohio*, 392 US 1, 20 L. Ed 2d 889, 88 S. Ct. 1868, and the scope of the search "within the arrestee's immediate control" *Chimel v. California*, 395 US 752, 23 L. Ed 685, 89 S. Ct. 2034, led the Court to adopt the bright line rule of *Belton*, supra. Since the danger to the officer is the same, it makes no difference whether the stop is for a non-criminal traffic infraction or for a crime.

The fact that Florida has decriminalized certain traffic offenses should not lead to a different result. It would be absurd if police in Georgia could properly do a passenger compartment search for running a red light while such a search would be improper in Florida. It would likewise be absurd if the Legislature in Florida were to re-criminalize traffic infractions. One day a passenger compartment search would be unlawful, but after re-criminalization, lawful on the next day.

Finally, the Fifth District Court of Appeal, in *State v. Irvin*, 483 So.2d 461 (1986) has specifically approved the search of an automobile incident to a stop for going 70 miles per hour in a 50 miles per hour zone.

"After the vehicle was pulled over, it was discovered that Irvin was driving with a suspected license and he was thereupon properly arrested for that crime. *Our approval of the initial stop thus itself validates the search* which uncovered the contraband as properly undertaken incident to the arrest." (Citing Belton, supra.) Because of this, *we do not pass on whether the search might have been authorized on other grounds.*" Supra, Footnote 2 at 462. (Emphasis supplied)

It is, therefore,

ORDERED AND ADJUDGED that the Motion to Suppress be and the same is hereby denied.

136

DONE AND ORDERED this 25th day of August, 1986, at West Palm Beach, Palm Beach County, Florida.