553 So.2d 714 (1989)
In the Interest of B.M., a Child.
No. 88-1162.
District Court of Appeal of Florida, Fourth District.
December 6, 1989.
Rehearing Denied January 10, 1990.
Richard L. Jorandby, Public Defender, and Susan D. Cline, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
Appellant, a juvenile, was found to be delinquent on the charge of carrying a concealed weapon. He appeals, claiming the trial court erred in denying his motion to suppress the weapon found as a result of an illegal search. We agree and reverse.
Officer Burns of the Boynton Beach Police Department was on routine patrol at about 10:30 p.m. one evening when he spotted a group of people standing around a car in the parking lot of a closed grocery *715 store. The area was a high crime area, and the officer had knowledge of two burglaries at the grocery store within the past two years. Burns knew that the store owner had complained about people gathering in his parking lot in the past, and the police made it a point to make extra patrols in the area. Burns also believed that the store had a "no loitering" sign on its wall on the night in question. Significantly, he testified that he did not believe that a "no trespassing" sign was also posted.
Burns decided to stop the gathered people to find out who they were in case any crime had been reported in the area. As he approached, some of the people walked away, and several, including appellant, got into the car and attempted to leave. Burns drove up behind their car, exited his patrol car, and approached the driver of the vehicle, telling him to turn off the engine. Without informing the vehicle's occupants of any reason for their detention, Burns went back to his vehicle to call for backup. Two other officers arrived within the space of a few minutes. They removed the five occupants of the stopped vehicle one by one, frisked them, and obtained identification so that a records check could be made. When asked why they were in the parking lot, the consistent explanation to the police by all of the occupants was that they were looking for a party in the area. When the last person had exited the vehicle, one of the officers noticed a gun protruding to the rear of the front passenger seat where appellant had been seated. However, at the time appellant was frisked, the officer who conducted the frisk did not know of the discovery of the gun. In patting appellant's pocket he felt what he thought might be bullets. He then asked appellant what was in his pocket, and appellant emptied his pockets revealing the bullets. At no time prior to the discovery of the gun did any of the police officers on the scene believe that any of the vehicle occupants were armed. The vehicle's occupants were detained for approximately thirty to forty five minutes from the time that the officer first stopped the vehicle to the time of the arrest of appellant.
In denying the motion to suppress, the trial court reasoned that under section 810.09(2)(b), Florida Statutes (1987) a criminal trespass occurs when a person remains on property after defying an order to leave the property conveyed by "an authorized person." Determining that Officer Burns was an "authorized person", the trial court held that the removal of appellant and his friends from the vehicle and the frisk, all of which revealed the gun and bullets, was a permissible stop under the statutory authority, relying on State v. Dilyerd, 467 So.2d 301 (Fla. 1985).
We believe that the trial court erroneously applied Dilyerd. Even if we assume that the police officers had authority from the owner to remove trespassers, their authority in this case where no warning against trespassing was posted was limited to conveying an order to depart the premises. See Kelly v. State, 407 So.2d 1011 (Fla. 5th DCA 1981). Whether further detention or search is justified where there is no defiance of the order[1] depends upon whether the officer has a founded suspicion of criminal activity or, as in Dilyerd, a reasonable belief based on specific and articulable facts, along with rational inferences, which justifies his belief that the occupants of the car were dangerous and might gain control of weapons within the car. Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). That test was met in Dilyerd, and the supreme court approved the search conducted in that case based upon the officer's testimony that he saw a furtive movement by the passenger which led the officer to fear the presence of a weapon. In contrast, the officer in this case presented no facts at all which would give rise to a belief that the appellant and the other passengers in the vehicle were dangerous. In fact each officer present testified that he did *716 not suspect that the vehicle's occupants had possession of any weapons. Therefore, the stop to warn which arguably the police could make under section 810.09, Florida Statutes (1987) does not permit the investigatory search conducted in this case.[2]
The State does not suggest, and the record would not support, justifying the search on any other grounds. Although there was a "no loitering" sign, the record does not reveal facts which would support a founded suspicion that the offense of loitering was occurring. Fla. Stat. § 856.021 (1987). The statute contains two requirements: (1) that conduct occur in a place and in a manner not usual for law-abiding individuals, and (2) that the conduct is under such circumstances as to threaten public safety. State v. Ecker, 311 So.2d 104 (Fla. 1975). While we might accept the presence of the first element in this case, we are clear that the second element did not occur. Officer Burns never testified that he suspected that a crime was about to be committed. In fact, the only reason he stopped appellant and his companions was to identify them in case he discovered later that a burglary or other crime at the grocery store had occurred. To justify a "founded suspicion" stop and subsequent investigatory search on this officer's explanation would result in the unconstitutional application of the loitering statute condemned in Ecker and by this court in Springfield v. State, 481 So.2d 975 (Fla. 4th DCA 1986). Indeed the trial court granted the motion for judgment of acquittal as to the loitering charge against appellant.
Because the weapon and bullets were seized as a result of an unlawful detention and search, they should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We thus reverse judgment and disposition and direct the discharge of appellant.
HERSEY, C.J., and GUNTHER, J., concur.
NOTES
[1] In this case, of course, the appellant and his friends were attempting to leave prior to the approach of the police officer and were prevented from leaving.
[2] Although Dilyerd characterized this as a "stop", the use of that term has constitutional significance in Fourth Amendment analysis. A stop to inform trespassers of an order to leave required under section 810.09(2)(b), Florida Statutes, is more akin to a "mere encounter" than a "stop" for constitutional analysis. This is not a stop based on founded suspicion, because the crime of trespass on unposted land does not occur until after the trespasser is warned to depart and fails to do so.