GLICKSTEIN, Judge,
dissenting.
With all due respect to the conscientious trial judge and my able colleagues, I would reverse.
The defendant had been stopped by a trooper for speeding. When the trooper asked if he had a gun, the defendant opened the trunk and unzipped a tote bag; whereupon the trooper and defendant simultaneously grabbed the holstered weapon which the trooper later learned had been licensed. A backup sheriffs road patrol officer then arrived.
The defendant’s version of what then occurred was to the effect that he had zipped the tote bag up before he removed it from the trunk and took it to the driver’s side of his vehicle, where he left it on the seat.
The backup officer’s testimony was that she did not like the defendant’s fidgeting on the other side of his vehicle, so she placed him in the back seat of her vehicle and then went back to the defendant’s vehicle. The trial judge did not accept the balance of her testimony that she then saw a plastic bag sticking out of the defendant’s tote bag. There is no doubt that the defendant was seated in the officer’s vehicle when this “find” occurred. The time was 7:15 p.m. on February 14, 1990; and the officer did not use a flashlight. The defendant and another interested witness said the tote bag was zipped up when the officer announced to the trooper, some distance away, what she had found.
State v. Dilyerd, 467 So.2d 301 (Fla.1985), and Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), involved, respectively, an officer’s having seen a furtive movement by the vehicle’s occupant which led the officer to fear the presence of a weapon on the floorboard or under the seat, and an officer’s flashing his light inside the vehicle to search for weapons. Here, the backup officer claimed she saw contraband in plain view, a claim the trial court rejected.
The following language in Michigan v. Long is significant:
In this case, the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long’s immediate grasp before permitting him to reenter his automobile. Therefore, the balancing required by Terry clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.
Id. 103 S.Ct. at 3482 (emphasis added). In my view, the trial court here substituted the belief of a hypothetical, reasonably acting officer for missing testimony by any officer searching for weapons because of concern for his or her own safety when the contraband was found. Had such indispensable testimony been in this record, I would have joined in the affirmance. When I add to the absence of such testimony the backup officer’s concern with the defendant’s fidgeting occurring before she put him in the backseat of the sheriff department vehicle, the trial court’s rejection of the deputy’s testimony that she subsequently saw the contraband in plain view, and the use of a hypothetical reasonable person test with no supportive testimony, I must conclude the fourth amendment has not been properly served by an affirmance.
J.R.H. v. State, 428 So.2d 786 (Fla. 2d DCA 1983), a similar case, points out a constitutional way for officers to handle these situations which is less intrusive; namely, first inquiring of the defendant of *1001 the existence of a weapon in a closed container and, second, a pat down of the container, if feasible. There is yet another way: obtaining a search warrant — unless they become extinct or obsolete.