697 So.2d 191 (1997)
L.K.B., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2152.
District Court of Appeal of Florida, Fifth District.
July 18, 1997.
*192 James B. Gibson, Public Defender, and Lyle Hitchens, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and E. Paul Stanley, Assistant Attorney General, for Appellee.
EN BANC
PER CURIAM.
L.K.B., a juvenile, was found guilty of loitering or prowling[1] and resisting, obstructing, or opposing a police officer while the officer was executing legal process or executing a legal duty without violence.[2] He was adjudicated a delinquent and placed on community control for the maximum time permitted for these offenses, one and one-half years. He argues on appeal that the evidence at trial was insufficient to support his conviction for both offenses. We affirm.
The evidence at trial established that Robillard, manager of a Walgreen drugstore which was open all night, observed L.K.B. and another male companion lounging in front of the drugstore near the pay phone for several hours between 7:30 p.m. and midnight. They were talking loudly. A customer complained to Robillard about their "loud profanities." Robillard testified that because of L.K.B's and his companion's behavior, two customers requested that he escort them to their vehicles. Robillard made a 911 call to the police in order to have L.K.B. and his companion removed from the premises.
Officer Miller responded at approximately midnight. When he pulled into the parking lot, the juvenile and his companion were standing near the pay phone. The officer told them he needed to talk to them a few minutes. Both suspects instantly became aggressive. L.K.B. failed to identify himself. Within seconds, other individuals from a nearby motel came running across the street, yelling at the officer. Three or four other officers arrived and the crowd was subdued.
Officer Miller again addressed L.K.B., stating he needed identification from the juvenile in order to complete the trespass warning, so that he could remove him from *193 the premises as requested by the manager. L.K.B. laughed at him and ran away, refusing to provide any identification. Miller commanded him to stop. L.K.B. continued to run and the officer chased and caught him. Miller testified that he was acting in the course of a lawful investigation when he approached L.K.B. and his companion at the pay phone. See State v. Dilyerd, 467 So.2d 301, 304 (Fla.1985) (stop justified when suspected trespassers were on private property and police had been alerted by authorized person to remove trespassers).
We believe that the evidence at trial was sufficient to sustain the loitering conviction. Under the provisions of the loitering statute, the elements of the offense are: (1) the defendant loitered in a place, at a time, or in a manner not usual for law-abiding individuals; (2) such loitering was under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. State v. Ecker, 311 So.2d 104, 106 (Fla.1975), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975). It is not usual for law abiding juveniles to harass the patrons of a private business for some four hours into the late evening to the extent that two such patrons feel the need for management to escort them to their cars, and management itself is finally forced to put in an emergency call to the police to remedy the situation. See § 856.021, Fla. Stat.; State v. Ecker. Moreover, among the statutory factors that may be considered are flight at the approach of a law enforcement officer and refusal of the suspect to identify, both factors present in this case. See § 856.021(2), Fla. Stat.
As indicated, we also affirm the conviction for resisting a police officer who is performing a legal dutyi.e., conducting a valid Terry stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and § 901.151, Fla. Stat. (1995). The officer in this case had an articulable suspicion that L.K.B. was about to commit, and perhaps had already committed, the offense of assault against customers of the drugstore. The fact that the concern of the store manager focused primarily on loss of profits does not alter the fact that he called the police on an emergency basis because L.K.B. and a companion were terrorizing store customers to the extent that two had received escorts to their cars in what management described to the police as "an ongoing ordeal." L.K.B.'s conduct had lasted over a four to five hour period with complaints from customers about profanities. The investigating officer testified that he thought that L.K.B. was about to commit a robbery on a person coming out of the store. If the facts did not reasonably justify that suspicion, they at least justified the suspicion that an assault was imminent. Under these circumstances, the officers were authorized to detain L.K.B. and ascertain his identity. State v. Pye, 551 So.2d 1237, 1239 (Fla. 1st DCA 1989). Flight from that detention was unlawful. M.C. v. State, 450 So.2d 336 (Fla. 5th DCA 1984).
AFFIRMED.
COBB, W. SHARP, GOSHORN, HARRIS, PETERSON and ANTOON, JJ., concur.
GRIFFIN, C.J., dissents with opinion.
THOMPSON, J., dissents with opinion, with which GRIFFIN, C.J., and DAUKSCH, J., concur.
GRIFFIN, Chief Judge, dissenting.
I agree with Judge Thompson's response to the majority's application of the loitering and prowling statute to the appellant's conduct in this case. The arresting officer offered no testimony that he observed any behavior on appellant's part at all, good or bad, "usual" or "unusual." Certainly, he never observed what the majority describes as "harassing patrons." He testified only that he had seen L.K.B. and his companions at the location earlier when he was on patrol and, when he arrived at the request of the manager, they were "at the phone." When the officer told them he needed to talk to them because he had been called by the manager, another person, not appellant, became "aggressive" and "ran his mouth," but appellant said nothing. The defendant had never even been asked to tone down his behavior, nor was he ever asked to leave the premises. The only evidence of the conduct *194 of these young men came from the store manager, who testified that he observed nothing that caused concern for store or customer safety:
STATE ATTORNEY: Were you concerned for the store safety or the customers' safety? Were you concerned these individuals might harm customers?
MANAGER: No, not really. I justI'm concerned about the profitability of my business, and individuals hanging outside the pay phone does not concur with proper business techniques that we like to have at Walgreens or any place.
Apart from the fact that the officer observed no harassing of patrons and that there is no other competent evidence of "harassing patrons," there is no support anywhere in Florida jurisprudence for the notion that appellant's behavior in the parking lot of an open business constituted the crime of "loiter[ing] ... in a place, at a time or in a manner not usual for law abiding individuals" under circumstances that warrant a "reasonable alarm or immediate concern for the safety of persons or property...." The officer knew that; he did not arrest appellant for "loitering and prowling" but for "resisting officer without violence." The majority's conclusion that bad behavior in a public place constitutes the crime of "loitering and prowling" because it isn't the way "law-abiding" citizens "usually" behave is exactly contrary to the supreme court's narrow interpretation of the statute when they upheld its constitutionality in State v. Ecker, 311 So.2d 104 (Fla.1975). There's no evidence of any words spoken by appellant tending to threaten anyone or cause a breach of the peace nor any evidence that any citizen's way was obstructed. The patrons may or may not have felt harassed, but behaving in a way that makes people uncomfortable or nervous is not an element of the crime of loitering and prowling. I would reverse the conviction for that crime.
As for the majority's conclusion that a valid Terry stop supports the "resisting arrest without violence" conviction, there is also no evidence in this record that would support a Terry stop. The best the arresting officer could come up with was:
PUBLIC DEFENDER: Officer, what crime did you think was about to occur?
OFFICER: Didn't know if they possibly were going to steal something from the store or commit a robbery on a person coming in and out of the store.
PUBLIC DEFENDER: What information led you to believe that crime was about to occur?
OFFICER: Well, just them loitering around in the parking lot.
Hanging out in the parking lot of an open business near a telephone furnished for the use of the public, even over the course of a three hour period, does not produce a constitutionally valid suspicion of criminal activity, regardless of how much that conduct annoys the customers. There is nothing in this record to suggest that appellant had any interaction whatsoever with either the manager or any of the store's customers, much less threaten them. The manager testified the appellant remained by the phone at all times. He never even heard profanity, only "loud conversation." No customer testified and the most the manager could say was that a patron told him about profanities. As for the "emergency" 911 call, the manager testified that he could not remember if he used 911 but if he did, it was because the store was very busy and he didn't have the means to go to the office to get the non-emergency number.
The majority's post hoc determination that the officer had an articulable suspicion of an assault justifying a Terry stop, thereby making it a crime when L.K.B. ran from him creates a disturbing floor for investigative stops, since virtually any conduct will meet it. The officer himself did not consider he was making a Terry stop; he plainly explained what he was doing:
OFFICER: Because they had been hanging therehanging around there all night long, management advised me that they had been making customers nervous.
They had been thereand I had observed them there for quite some time; you know, I had observed them out *195 there while I was on patrol but finally just got called to there.
And he wanted them trespassed off the property, trespass after warning affidavit issued to them.
* * * * * *
PUBLIC DEFENDER: Did you have cause to arrest him?
OFFICER: No.
PUBLIC DEFENDER: Did you see him commit any kind of illegal act?
OFFICER: No.
PUBLIC DEFENDER: So he could have refused to tell you who he was with no problem, right? It was just a consensual encounter, right?
OFFICER: No.
PUBLIC DEFENDER: No what?
OFFICER: No, it was not a consensual encounter. It was a police stop.
PUBLIC DEFENDER: Okay. And what was the reason for the stop?
OFFICER: I got called there by the management because they had been loitering around in front of the store at the pay phone all evening long, making customers nervous. Management had to
PUBLIC DEFENDER: And the management asked you to remove them from the property?
OFFICER: He asked me to remove them from the property and issue a trespass warning affidavit so they don't return to the property, because according to management, this has been an ongoing ordeal.
The plain truth is that this defendant was arrested because he ran off when the officer approached him to give him a trespass warning. The problem is that a police officer cannot detain a person and force him to identify himself for the purpose of giving a trespass warning.
Section 810.09, Florida Statutes provides that a person trespasses in violation of that statute by willfully entering or remaining in any property other than a structure or conveyance as to which notice against entering or remaining has been given. § 810.09(1), Fla. Stat. (1995). This property owner had a right to ask the defendant to leave his property, and the defendant had the right, as well as the duty, to do so. The fact that the property owner elected to have the police do the asking did not affect this defendant's right to leave without interference. It also does not confer any special rights upon the officer who is merely acting on behalf of the property owner. The officer's agreement to convey the trespass warning does not convert this into a "legal duty."
The correct analysis of a case such as this is found in In the Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1989). In B.M., a police officer on routine patrol at night observed a group of people standing around a car in the parking lot of a closed grocery store. No sign warned against trespassing on the property. Because it was a high crime area and the officer was aware of previous burglaries at the store, he approached the group. The group then dispersed, with some walking away and others getting into the car and attempting to leave. The officer stopped the car and then called for backup. The vehicle's occupants were removed from the vehicle and frisked, and an identification check was made. After B.M. exited the car, a weapon was observed on the seat where he had sat. B.M.'s motion to suppress the weapon was denied by the trial court, but the appellate court reversed. The fourth district held that even if it was assumed that the officers had authority from the premises' owner to remove trespassers, the officer's authority where no warning against trespassing had been posted was limited to conveying an order to depart the premises. 553 So.2d at 715. The court added that detention beyond giving the order was permissible only if the officer had a founded suspicion of criminal activity. The bottom line in this case is that appellant has been convicted of two crimes for leaving when approached by a police officer whose purpose and only legal function was to ask him to leave.
I would reverse these convictions.
THOMPSON, Judge, dissenting.
Because I do not agree that the evidence was legally sufficient to sustain convictions for loitering and prowling and for resisting *196 arrest without violence, I respectfully dissent.
During the course of a three or four-hour period beginning about 7:30 p.m., the manager of a freestanding 24-hour drugstore observed L.K.B. and another male remain near the pay telephone attached to the outside wall of the store. The manager called the police to have them removed. The responding police officer had seen two black males "hanging out" near the store on three different occasions when he passed the store on patrol, and "was going to go by there anyway probably and say hello and see what was going on." When he pulled into the parking lot in response to the call, the male with L.K.B. "started being pretty aggressive and started running his mouth...." Within seconds, the officer testified, individuals who had been across the street at a motel ran to the scene and began yelling. Three or four other officers arrived. After the crowd was subdued, the responding officer turned to L.K.B., stating that he needed identification from him, and that he had "just got a trespassing from the property, that's what the management wanted." L.K.B. laughed and ran off, refusing to provide identification. The officer ordered him to stop and then chased him on foot.
To prove a charge of loitering and prowling under section 856.021, the state must show (1) that the defendant loitered in a place, at a time, or in a manner not usual for law-abiding individuals, and, (2) that the loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. State v. Ecker, 311 So.2d 104, 106 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975). As to the first element, it must be established that the defendant engaged in incipient criminal behavior in which law-abiding people do not usually engage due to the time, place, or manner of the conduct involved. D.A. v. State, 471 So.2d 147, 150 (Fla. 3d DCA 1985) (citing Model Penal Code § 150.6 comment at 388-91 (1980)). The purpose of the statute is to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act, id. at 151, but it is not directed at non-aberrant, harmless behavior which evinces no threat of immediate future criminal activity, id.. The gist of the first element is aberrant and suspicious criminal conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive crime. Id. The second element is established by a showing that the unusual or incipient criminal behavior threatens the safety of persons or property in the immediate area and amounts to an imminent breach of the peace or an imminent threat to public safety. Id. at 152.
In the instant case neither element has been satisfied. The evidence that L.K.B.'s behavior was unusual for a law-abiding citizen is marginal, and any concern for the safety of persons or property in the immediate vicinity was speculative at best. See Woody v. State, 581 So.2d 966 (Fla. 2d DCA 1991) (conviction reversed where group of males in residential area known for drug activity scattered at approach of police and defendant hid under bush). The fact that a person idles near an open business is insufficient to sustain a conviction for loitering and prowling. See State v. Freeman, 542 So.2d 483 (Fla. 2d DCA 1989) (defendant could not be arrested for loitering and prowling where he was standing with group on street corner adjacent to grocery store and group dispersed on approach of police officers); T.L.F. v. State, 536 So.2d 371 (Fla. 2d DCA 1988) (no probable cause where police observed defendant standing at rear of building during business hours and where defendant refused to identify himself or explain his presence); C.V.H. v. State, 557 So.2d 927 (Fla. 5th DCA 1990) (conviction reversed where defendant had been observed for two minutes in parking lot adjacent to store and fled on approach of police). In the instant case, L.K.B.'s presence for several hours near the telephone outside the open business in full view of any customer or passerby, including a police officer on patrol, did not point to incipient criminal behavior, so the finding of guilt cannot be sustained.
I note further that section 856.021 reaches the outer limits of constitutionality and that *197 it should not be used as a "catchall" to detain and charge citizens when there is an insufficient basis to sustain a conviction on some other charge, D.A., 471 So.2d at 153, or to alleviate social problems, C.V.H., 557 So.2d at 929. I also take exception to statements by the majority that L.K.B. was "harass[ing] the patrons of a private business for some four hours" and that he was "terrorizing store customers". If the record supported those allegations, certainly L.K.B. could have been arrested. The record only shows that L.K.B. and his companion were loud and boisterous and used profanities in a place where the public was invited. There is absolutely no showing in the record that the two boys spoke to or even looked at any patron, and there is certainly no support for the majority's remarkable contention that L.K.B. and his companion were "terrorizing" or "harass[ing]" any patrons. The fact that two patrons were displeased or upset by the behavior of the two boys does not lead to the conclusion that they were engaged in incipient criminal behavior. Furthermore, neither the fact that this court elects to use the terms "harass" and "terrorize," nor the fact that the store manager used the term "ordeal," nor the fact that the store manager elected to dial the police emergency number (after three or four hours), transforms rudeness into criminality.
The evidence was also insufficient to prove a violation of section 843.02. To support a conviction under section 843.02 the state must show (1) that the officer was engaged in the lawful execution of a legal duty, and, (2) the action of the defendant constituted obstruction of or resistance to that legal duty. S.G.K. v. State, 657 So.2d 1246 (Fla. 1st DCA 1995). Convictions for violations of the statute have been upheld where a defendant resisted a probable cause arrest or a Terry stop.[1]See, e.g., Perry v. State, 593 So.2d 1165 (Fla. 1st DCA 1992); Johnson v. State, 433 So.2d 648 (Fla. 2d DCA 1983). Convictions have been upheld where the defendant's conduct physically impedes an officer in the performance of legal duties. See Wilkerson v. State, 556 So.2d 453 (Fla. 1st DCA) rev. denied, 564 So.2d 1088 (Fla.1990)(defendant refused to leave area where arrests were being made); M.M. v. State, 674 So.2d 883 (Fla. 2d DCA 1996) (despite warning defendant continued to approach officer who was struggling with suspected trespasser). Convictions also have been upheld where persons lawfully arrested give a false name. See Rumph v. State, 544 So.2d 1150 (Fla. 5th DCA 1989).
A defendant cannot be convicted of resisting a Terry stop unless the officer had an articulable suspicion that the defendant had committed, was committing, or was about to commit an offense. See, e.g., C.K. v. State, 487 So.2d 93 (Fla. 3d DCA 1986). Here, although the police officer speculated that L.K.B. might rob the store or its customers (not a smart move for someone who had been calling attention to himself for three or four hours), and although he thought the motel occupants might have been using the drugstore telephone to further the illegal drug activity in which he surmised the occupants were engaged, nothing in L.K.B.'s behavior provided an articulable suspicion that he had committed, was committing, or was about to commit a crime. Certainly, the responding police officer was not concerned: while on patrol he decided he "was going to go by there probably and say hello...." Even Robillard, the manager of the store, testified that L.K.B.'s behavior did not cause him to be concerned for the store's safety or the customers' safety.
Robillard was concerned only about the profitability of his business and he asked the police to give L.K.B. "a trespass warning" because he did not want his customers (whose subjective fear or concern does not translate to an articulable suspicion) upset or scared away from the store. See Section 810.09, Florida Statute (1995).[2] Section 810.09 does not require the detention of *198 L.K.B. for the notice to be given. It could have been posted or Robillard or the officer could have told L.K.B. to leave and not come back to the store, and that if he returned, he could be arrested. Pointec v. State, 614 So.2d 570, 573 (Fla. 5th DCA 1993). There is no statutory requirement that L.K.B. produce identification. The statute only requires that L.K.B. receive actual communication. L.D.L. v. State, 569 So.2d 1310 (Fla. 1st DCA 1990).
Because the officer lacked grounds to detain L.K.B., the finding of guilt cannot be sustained on the basis that he resisted lawful arrest or detention. Further, the finding cannot be sustained on the ground that he impeded the officer by refusing to remain and/or to identify himself, because he was under no obligation to do either. The extent of the officer's function was to issue a trespass warning. See In the Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1989). See also S.G.K.; Harris v. State, 647 So.2d 206 (Fla. 1st DCA 1994); Breedlove v. State, 605 So.2d 589 (Fla. 4th DCA 1992); F.B. v. State, 605 So.2d 578 (Fla. 3d DCA 1992); Robinson v. State, 550 So.2d 1186 (Fla. 5th DCA 1989); Steele v. State, 537 So.2d 711 (Fla. 5th DCA 1989); Burgess v. State, 313 So.2d 479 (Fla. 2d DCA 1975), certified question denied, 326 So.2d 441 (Fla.1976).
Perhaps this case is more about social mores than law. It is not unusual today to see young boys and girls remain for long periods of time at malls and other public places. Some dress differently: some wear drooped trousers to display underwear, and others sport body-piercing jewelry. The fact that they may be different, loud, and profane, however, cannot be the basis of an arrest for loitering and prowling. Nor can it be the basis for a Terry stop, as the majority holds, based on the suspicion that an assault was about to take placeunless "assaulting the sensibilities" of another is now a crime.
GRIFFIN, C.J., and DAUKSCH, J., concur.
NOTES
[1] § 856.021, Fla. Stat. (1995).
[2] § 843.02, Fla. Stat. (1995).
[1] See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] § 810.09 Trespass on property other than structure or conveyance.

(1) Whoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011, commits the offense of trespass on property other than a structure or conveyance.