MAY, C.J.
The defendant appeals an order revoking his probation. He argues the trial court erred in revoking his probation because the State failed to prove by compe *820 tent, substantial evidence that the defendant committed the crime of loitering or prowling, or any other criminal offense, as alleged in the affidavit of violation. We agree and reverse.
The defendant’s probation orders from two prior cases required that he not “violate any law of any city, county, state or the United States.... ” The affidavit filed in support of the violation of probation attested, in part, that the defendant violated condition k.4. of his probation orders by committing the criminal offense of loitering or prowling.
At the violation hearing, the State abandoned all allegations of violation except for k.4. The State elicited testimony from two witnesses — a husband and wife — who testified that sometime after 12:30 a.m., they heard an unusually hard knock or bang on their front door. The wife went to her bedroom window and saw a man outside, standing against a wall to the right side of the door, “trying to conceal himself from a camera.”
The home was equipped with video surveillance cameras, which were visible from the front door. The wife subsequently viewed the video and noted there had been two people who knocked on her door, and then walked away. The wife identified the defendant in court as one of the men who knocked on her door. She testified the defendant had been wearing a white sleeveless shirt and a light blue pair of pants.
The husband was in bed when he heard the knocking. He watched the video recording from the surveillance cameras. He testified that the video recording depicted a person knocking hard on his door and then slowly walking away, followed by another person knocking on the door.
The husband phoned law enforcement after he heard the knocking around 12:40 a.m. Law enforcement arrived in the area within two to three minutes and saw two men walking down the street about five houses away. When law enforcement first saw the men, they were walking from east to west. As the officer neared their location, he saw the men turn around and walk in the other direction. The officer testified that his suspicion was aroused when the men changed direction.
The officer exited his cruiser and made contact with the two men. They appeared nervous. The defendant wore a red, white, and blue shirt and a do-rag. The other man wore a very long t-shirt. Both the defendant and co-defendant admitted they did not reside in the neighborhood, but denied that they had knocked on any door. No one else was in the area.
The officer stepped back from the men, drew his service weapon, and ordered them not to walk toward him as they were making him nervous. The officer then asked the men if they possessed any weapons; they did not reply. When he again asked if they possessed weapons, they did not give a straight answer.
Because the officer could not see the co-defendant’s waistband, he instructed him to lift his long t-shirt. The officer observed what he believed was a firearm tucked in the co-defendant’s waistband. The officer ordered both men onto the ground and seized the gun.
The gun appeared to be a Glock, but turned out to be a BB gun. The officer arrested both men. The female witness identified the defendant at the scene as the man she saw at her home.
After the men were under arrest, the officer read Miranda warnings to each of them. The defendant waived his right to remain silent and told the officer that he and the co-defendant were returning from a club. The defendant claimed that they *821 were in the neighborhood because they “got in a disturbance” with the girls who had given them a ride causing them to be dropped off there. The co-defendant gave a slightly different story. The officer searched the men, and seized gloves from the pockets of both.
Based on the time, place, and property involved, the trial court found the two men had engaged in incipient criminal behavior in which law abiding people do not engage. The court found the State had proven the defendant committed the crime of loitering or prowling “by the greater weight and preponderance of the evidence.” It further found that the defendant violated condition k.4. of his probation orders, and that the violation was willful and substantial.[1]
The defendant entered a plea of nolo contendere to the substantive charge of loitering or prowling. He now appeals the orders revoking his probation and the resulting sentences.
The defendant argues the trial court erred in finding him in violation of his probation because the State failed to produce competent, substantial evidence that he committed the crime of loitering or prowling. The State responds that it needed only to prove by preponderance of the evidence that the defendant committed loitering or prowling, and it sufficiently did so.
To establish that an individual violated probation by committing a new law violation, the State must prove by a preponderance of the evidence that the individual committed the charged offense. We must first determine, under a de novo standard, whether substantial, competent evidence supports that finding. See Santiago v. State, 874 So.2d 617, 624 (Fla. 5th DCA 2004). Then we must determine if the trial court abused its discretion in determining that the new law violation constituted a substantial and willful violation warranting revocation of the defendant’s probation. See State v. Carter, 835 So.2d 259, 262 (Fla.2002).
Section 856.021(1), Florida Statutes (2010), makes it “unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.”
Because of its potential for abuse, the loitering and prowling statute must be applied with special care. It cannot be emphasized enough that the loitering and prowling statute is not to be used as a “catchall” provision whereby police may arrest citizens where there is no other basis which would justify their detention. Instead, the proper application of this statute requires a delicate balancing between the protection of the rights of individuals and the protection of individual citizens from imminent criminal danger to their persons or property.
Mills v. State, 58 So.3d 936, 939 (Fla. 2d DCA 2011) (citations omitted) (internal quotation marks omitted).
The first statutory element “has been read to require a threat of immediate, future criminal activity.” V.E. v. State, 539 So.2d 1170, 1171 (Fla. 3d DCA 1989). “ ‘The first element ... is not directed at suspicious after-the-fact criminal behavior which solely indicates involve *822 ment in a prior, already completed substantive criminal act.’ ” A.D. v. State, 817 So.2d 1027, 1029 (Fla. 3d DCA 2002) (quoting D.A. v. State, 471 So.2d 147, 151 (Fla. 3d DCA 1985)).
The second element requires “justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.” § 856.021(1), Fla. Stat. (2010). As to this element, “there is a presumption of alarm if the defendant ‘flees, [or] conceals himself or any object.’ ” Hollingsworth v. State, 991 So.2d 990, 992 (Fla. 4th DCA 2008) (quoting B.J. v. State, 951 So.2d 100, 102 (Fla. 4th DCA 2007)). The suspect must be given an opportunity to explain and dispel any alarm or concern, but “ ‘the failure of a defendant to explain his presence and conduct cannot constitutionally be considered as a circumstance tending to establish the second element.’ ” V.E., 539 So.2d at 1172 (quoting DA, 471 So.2d at 154).
Because the offense of loitering and prowling is a misdemeanor, a police officer may only make a warrantless arrest for this offense if both elements of the crime are committed in his presence. Consequently, only a police officer’s own observations may be considered in determining whether probable cause existed to make a warrantless arrest. The officer must be able to point to specific and articulable facts, which, when taken together with rational inferences, reasonably warrant a finding that a breach of the peace is imminent or the public safety is threatened.
Freeman v. State, 617 So.2d 432, 433 (Fla. 4th DCA 1993) (citations omitted). Because only the officer’s observations may be considered, the witnesses’ report of individuals knocking on their door cannot be considered. See Springfield v. State, 481 So.2d 975, 978 (Fla. 4th DCA 1986).
Neither the defendant nor the co-defendant attempted to flee or conceal themselves. Without the witnesses’ report or the items found in the defendant’s possession, the only arguably suspicious behaviors that the officer observed were: (1) the men were in a residential area that they admittedly did not live in; at 12:30 a.m.; (2) they began walking in the other direction when the officer approached; and, (3) the men appeared nervous. This is insufficient to prove that the defendant was about to commit a crime.
We previously addressed a similar set of facts in Freeman. There, a police officer testified that he responded to a complaint at 3:20 a.m. of “two black men carrying a burlap bag and hanging around parked cars in a residential complex.” Freeman, 617 So.2d at 433. Both men jumped a fence and ran when they saw the officer. Id. The burlap bag contained gloves and a gun. Id.
We reversed the revocation of the defendant’s probation because
the arresting officer merely saw two men jump a high wall and start walking towards the street. He did not see either man carrying anything prior to stopping them. [And][t]hese facts do not support a finding that the officer had probable cause to arrest [the defendant] for loitering and prowling.
Id.; see also Lucien v. State, 557 So.2d 918 (Fla. 4th DCA 1990); A.D., 817 So.2d at 1027.
Here, the State did not establish by a preponderance of the evidence that the defendant was loitering or prowling. We therefore reverse the order revoking the defendant’s probation and remand the case to the trial court.

Reversed and Remanded.

TAYLOR and GERBER, JJ., concur.

. The trial court revoked the defendant’s probation and sentenced him to a term of ten years’ imprisonment, followed by five years' probation, with credit for time previously served in one case; in the second case, the trial court sentenced the defendant to concurrent terms of five years’ probation, to run consecutively to the first case.