DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GEOFFREY MADGE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-110

[March 4, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Sandra Perlman, Judge; L.T. Case No. 11-008432CF10A.

Carey Haughwout, Public Defender, and Nan Ellen Foley, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

The appellant challenges the trial court's finding that he violated his probation by committing the offense of loitering and prowling. He argues that the State's evidence did not establish loitering and prowling because the responding officers did not personally observe any type of behavior that appeared to be on the verge of ripening into a criminal act. We agree and reverse.

After the appellant was placed on probation, the State filed an affidavit of violation of probation ("VOP"), which alleged that the appellant had committed the new offense of loitering and prowling.[1]

The State's case comprised the testimony of two witnesses. Ms. Amy Lynn Knowles testified that she visited a restaurant during her lunch break and picked up her takeout order. As she was returning to her vehicle, she noticed a man approaching the passenger side of her car.

---

[1] The State elected not to proceed on its allegation that the appellant also violated his probation by committing a petit theft.

Becoming concerned, she quickly entered her vehicle, slammed the door shut, locked the car, and tossed her purse and takeout items onto the front passenger seat. Meanwhile, the appellant repeatedly pulled on the passenger side door handle. The appellant motioned to himself and then the passenger front seat. In response, Ms. Knowles put her car in reverse and backed up. Eventually, the appellant released his grip on the car door handle and walked back toward the restaurant and around a corner.

Ms. Knowles drove to a nearby parking lot and telephoned the police. Shortly afterward, officers arrived at the restaurant, where the appellant had resurfaced. At the VOP final hearing, only one of the responding officers testified. He explained that he gave the appellant the opportunity to dispel his alarm, but the appellant's account did not dispel his concern. Accordingly, he arrested the appellant for loitering and prowling. The officer did not testify to the contents of the appellant's statement. At the close of the State's case, the court rejected defense counsel's argument that the State did not establish the elements of loitering and prowling.

The appellant testified that he approached Ms. Knowles because she motioned for him to come over to her car. Because a van was parked close to the driver's side of Ms. Knowles' car, he went around to the passenger side. He assumed she wanted to ask for directions. It became apparent after he pulled on her passenger side door handle that she did not want to speak with him, so, he testified that he made his way back to the bench in front of the restaurant. When the officers arrived, the appellant cooperated with their investigation.

On appeal, the appellant contends the trial court erred in finding he committed the new offense of loitering and prowling, as he did not do anything in the officers' presence constituting a loitering and prowling. The State responds that a conviction for loitering and prowling may be based on acts not occurring in the officer's presence, and it requests this Court to recede from its precedent holding otherwise.

Some history regarding Florida's loitering and prowling statute, section 856.021, Florida Statutes (2012),[2] provides guidance on the issue before

---

[2] The statute provides the following:

> (1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

us.  Shortly after the statute was enacted, the Florida Supreme Court, in upholding its constitutionality, explained the purpose of the statute:

> This new statute . . . is patterned after the Model Penal Code, Proposed Official Draft Section 250.6 of the American Law Institute (1962).  The drafters intended that this type of statute or ordinance be a justifiable and valuable law enforcement tool for the protection of society and for the preservation of public peace and order.
> . . . .
> The whole purpose of the statute is to provide law enforcement with a suitable tool to prevent crime and allow a specific means to eliminate a situation which a reasonable man would believe could cause a breach of the peace or a criminal threat to persons or property.

*State v. Ecker*, 311 So. 2d 104, 107–10 (Fla. 1975).

Relying on the language in *Ecker*, the Third District, in 1985, addressed the burden of proof for a loitering and prowling charge:

> [T]he statute is forward-looking, rather than backward-looking in nature.  Its purpose is to punish a certain type of

> (2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object.  Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct.  No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
> (3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree . . . .

§ 856.021, Fla. Stat. (2012).

3

incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act. . . . [A]s stated in the comment to Section 250.6 of the *Model Penal Code* upon which the statute is patterned, . . . "[t]his formulation limits the offense to its essential law enforcement rationale of justifying intervention to prevent incipient crime. . . ."

*D.A. v. State*, 471 So. 2d 147, 151 (Fla. 3d DCA 1985) (third alteration in original) (quoting MODEL PENAL CODE § 250.6 cmt. at 391 (1980)).

The Third District reversed the loitering and prowling conviction, which was based on an officer's discovery of evidence of an apparent attempted automobile theft after seeing the defendant and others flee the scene. In doing so, the court reasoned that "[t]he police did not act to prevent crime before it occurred; they acted to apprehend a suspect as to an already completed crime." *Id.* at 154.

A few years after *D.A.*, the Third District reaffirmed its view that the statute is "forward-looking." In *V.E. v. State*, 539 So. 2d 1170 (Fla. 3d DCA 1989), a woman observed a youth peering into the window of her home and heard still another person trying to open a door leading into her home. Fifteen minutes after she called the police, an officer arrived, spoke to the woman, and then patrolled the area where he spotted two youths walking near the woman's home. In reversing V.E.'s conviction for loitering and prowling, the court reasoned as follows:

> While it is true that the officer had information that the youth had been involved in arguably suspicious behavior (looking into the woman's window while his friend tried the door) some twenty minutes before the officer saw him, the purpose of the loitering and prowling statute is "to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act. . . . The statute is forward-looking rather than backward-looking in nature." Here, the state did not establish . . . that V.E. was about to attempt to commit a criminal act.

*Id.* at 1171–72 (quoting *D.A.*, 471 So. 2d at 151).

The bottom line is law enforcement must observe the conduct necessary to establish the two elements of loitering and prowling. First, the officer must observe conduct "not usual for law-abiding citizens." Second, the officer must have "a justifiable or reasonable alarm or immediate concern"

of future criminal activity.

While the observations of lay persons leading up to the arrival of law enforcement may provide the factual background, prior wrongdoing cannot establish the basis for a loitering and prowling charge. *See, e.g., B.A.A. v. State,* 356 So. 2d 304, 306 (Fla. 1978) ("[T]here are no specific and articulable facts which would reasonably warrant a finding that the public peace and order were threatened or that safety of persons or property was jeopardized by the actions of the juvenile."); *Jones v. State,* 117 So. 3d 818, 822 (Fla. 4th DCA 2013) (stating that the court could not rely on observations of lay witnesses of events that occurred before law enforcement arrived to determine whether defendant was guilty of loitering and prowling); *A.D. v. State,* 817 So. 2d 1027, 1029 (Fla. 3d DCA 2002) (holding evidence insufficient to support finding that juvenile committed loitering and prowling); *Freeman v. State,* 617 So. 2d 432, 433 (Fla. 4th DCA 1993) (reversing probation violation based on loitering and prowling arrest because officer must be able to point to specific and articulable facts).

To the extent that prior decisions have cited or relied upon section 901.15(1), Florida Statutes (2014), to support the requirement that the officer witness the defendant's conduct to prove the two elements of loitering and prowling, that reliance is seemingly misplaced. Section 901.15(1) requires an officer to witness a misdemeanor to make a warrantless arrest. That requirement has nothing to do with the burden of proof to establish the crime of loitering and prowling.

It makes no evidentiary sense to preclude reliable evidence from a fact finder because of a statutory limitation on law enforcement's arrest powers. It is the precise elements of the crime of loitering and prowling which make the officer's observations critical to satisfying the State's burden of proof. *See, e.g., E.F. v. State,* 110 So. 3d 101, 104 (Fla. 4th DCA 2013) (finding that in determining whether state proved elements of loitering and prowling, court was "limited to considering only the detective's observations"); *J.S.B. v. State,* 729 So. 2d 456, 457 (Fla. 2d DCA 1999) (recognizing that to sustain a conviction for loitering and prowling, the state must prove two elements, which must have occurred in the officer's presence); *K.R.R. v. State,* 629 So. 2d 1068, 1069–70 (Fla. 2d DCA 1994) (reversing adjudication of delinquency for loitering and prowling where officer received report of an automobile theft but did not witness any alarming behavior by the appellant, who was observed walking near the scene of the reported theft).

In *Jones,* we held the evidence insufficient to support the finding of guilt

for a loitering and prowling charge. *Jones*, 117 So. 3d at 822. Just like *Jones*, without the testimony of the lay witnesses, all that was left was the testimony of the officer. And like *Jones*, the benign behavior that occurred in the officer's presence did not amount to loitering and prowling, or even come close.

Here, there was no evidence presented at trial that the responding officers personally observed any alarming behavior or conduct which presented an "immediate concern for the safety of persons or property." In short, the evidence fell short. We therefore reverse.

*Reversed and remanded for proceedings consistent with this opinion.*

GROSS, MAY and CIKLIN, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

6