IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ADAM ACEVEDO,

       Appellant,

 v.

Case No.  5D15-931

STATE OF FLORIDA,

       Appellee.

_____/

Opinion filed July 8, 2016

Appeal from the Circuit Court
for Hernando County,
Stephen E. Toner, Jr., Judge.

James S. Purdy, Public Defender, and John
M. Selden, Assistant Public Defender,
Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and L. Charlene Matthews,
Assistant Attorney General, Daytona
Beach, for Appellee.

EVANDER, J.

Adam Acevedo appeals the trial court's order revoking his probation and

sentencing him to twenty-five years' imprisonment in the Department of Corrections.  The

only basis for the violation of probation was Acevedo's alleged commission of the crime

of loitering and prowling.  Because the evidence was insufficient to prove loitering and prowling, we reverse.

Acevedo was placed on probation in March 2011, after being adjudicated guilty of two counts of burglary of a dwelling with a battery, one count of aggravated stalking, and two counts of false imprisonment.  At the time of his alleged commission of the crime of loitering and prowling, Acevedo was wearing an electronic monitoring device pursuant to the conditions of his probation.  However, Acevedo did not have a court-ordered curfew, nor did he have any travel restrictions placed upon him that are relevant to this appeal.

Acevedo lived in the same neighborhood as Ms. Baillergeon.  Baillergeon worked as an account manager for 3-M Electronic Monitoring, a private company contracted by the Florida Department of Corrections to monitor electronic device activity.  On August 25, 2014, while conducting a training session, Baillergeon entered her address and the date of August 24, 2014, into the software to provide an example of how to track offender activity at a certain location on a specified date.  To her surprise, Acevedo's monitor showed activity around her residence.  Further investigation of Acevedo's monitoring device activity revealed that on August 21, 2014, Acevedo had been in or near Baillergeon's yard[1] for four to five minutes at approximately 10:00 p.m., and in or near Baillergeon's yard for fifteen minutes from 11:47 p.m. on August 23, 2014, until 12:02

---

[1] Baillergeon testified that in the normal and ordinary course of business, 3-M Electronic Monitoring downloads tracking information at least once an hour, but the tracking devices will record a GPS point every minute.  3-M Electronic Monitoring claims that ninety percent of all GPS points collected are accurate up to thirty feet in any direction.  Ms. Baillergeon testified, however, that in her experience, the GPS points were accurate up to ten feet in any direction.  There was no evidence presented at the violation of probation hearing as to the distance from Baillergeon's house to her property line.

2

a.m. on August 24, 2014. Baillergeon immediately reported her findings to law enforcement. Approximately two months later, Detective Breedlove interviewed Acevedo to ask why he was at Baillergeon's residence. According to the detective, Acevedo indicated that he was in that area because he was taking a shortcut to his girlfriend's house. Because Acevedo's girlfriend's home was located in the opposite direction, Detective Breedlove understandably did not find the explanation credible. Acevedo then suggested that he may have been looking for his mother's cat. Acevedo lived with his mother and stated that the cat constantly escaped from the house and, on those occasions, his mother would request that he go find the cat. Detective Breedlove did not arrest Acevedo, but ultimately the State charged him with violating his probation by committing the crime of loitering and prowling.

At the violation of probation hearing, the State introduced Acevedo's electronic monitoring tracking record through Baillergeon's testimony. The tracking record had been reduced to CD-ROM format. Assuming the tracking record precisely pinpointed Acevedo's locations, Acevedo had been in different parts of the non-fenced portion of Baillergeon's yard, including near bedroom windows (Baillergeon testified that the window blinds would have been down). Baillergeon had never met Acevedo, but her neighbor testified that Acevedo had indicated a desire to meet her.

Acevedo's mother testified that she often sent Acevedo out in the late evening to search for her cat, but could not recall if she had done so on the evenings in question. Baillergeon's neighbor testified that he had seen the cat in his yard on occasion. At the

3

conclusion of the evidence, defense counsel argued that the State had failed to establish a violation of Florida's loitering and prowling statute.[2]

The trial court rejected defense counsel's argument and specifically found that: (1) Acevedo had been given the opportunity to explain his presence in Baillergeon's yard to Detective Breedlove and to dispel the alarm that was created by his presence, but had failed to do so; (2) the testimony of Acevedo's mother and Baillergeon's neighbor regarding the cat was not credible; and (3) Acevedo's presence in Baillergeon's yard at nighttime created "a reasonable suspicion and a great deal of alarm" and that there was no reasonable explanation for Acevedo's behavior. The trial court concluded that Acevedo had willfully and substantially violated his probation by committing the crime of loitering and prowling.

Section 856.021, Florida Statutes (2014), provides:

(1)  It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer

---

[2] § 856.021, Fla. Stat. (2014).

did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.

(3) Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

The Florida Supreme Court has stated that the elements of the offense of loitering and prowling are: "(1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals; [and] (2) such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." *State v. Ecker*, 311 So. 2d 104, 106 (Fla. 1975). In addressing a challenge to the constitutionality of the statute, the Court recognized that if the statute "broadly proscribed loitering or idling," it would be unconstitutional. *Id.* at 107. As a result, the Court emphasized that to justify an arrest for loitering and prowling, the law enforcement officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant a finding that a breach of the peace is imminent or the public safety is threatened. *Id.* at 109. The Court concluded that the purpose of the statute was to provide law enforcement with a tool to prevent crime by providing "a specific means to eliminate a situation which a reasonable man would believe could cause a breach of the peace or a criminal threat to persons or property." *Id.* at 110.

The elements of section 856.021 render it a "forward-looking" statute. *V.E. v. State*, 539 So. 2d 1170, 1172 (Fla. 3d DCA 1989). Its purpose is "to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act." *Id.* (quoting *D.A. v. State*, 471 So. 2d 147, 151

5

(Fla. 3d DCA 1985)). *V.E.* is particularly instructive on the principle that the loitering and prowling statute is meant to apply to incipient criminal behavior, not past conduct. In *V.E.*, the victim observed V.E. looking into the window of her home while another youth attempted to open a door to the residence. *Id.* at 1171. The youths left the residence and the victim called law enforcement. *Id.* Shortly thereafter, a police officer arrived and found the two juveniles walking along the sidewalk approximately one block from the victim's home. *Id.* When confronted by the officers, V.E. explained that he was looking for a friend's house. *Id.* When the other juvenile gave an inconsistent answer, V.E. was arrested for loitering and prowling. *Id.* On appeal, the Third District Court of Appeal reversed V.E.'s adjudication of delinquency for loitering and prowling, concluding that the State had failed to prove the elements of the offense because, when the officer arrived on the scene, V.E. was not engaged in any incipient criminal conduct:

> While it is true that the officer had information that the youth had been involved in arguably suspicious behavior (looking into the woman's window while his friend tried the door) some twenty minutes before the officer saw him, the purpose of the loitering and prowling statute is "to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act…. The statute is forward-looking rather than backward-looking in nature."

*Id.* at 1171-72 (quoting *D.A.*, 471 So. 2d at 151).

Recently, in *Madge v. State*, 160 So. 3d 86 (Fla. 4th DCA 2015), our sister court held that a law enforcement officer's contemporaneous observation of the suspicious conduct was necessary to establish both elements of the offense:

> First, the officer must observe conduct "not usual for law-abiding citizens." Second, the officer must have "a justifiable or reasonable alarm or immediate concern" of future criminal activity.

6

*Id.* at 89; *see also Ellis v. State*, 157 So. 3d 467, 469 (Fla. 2d DCA 2015) (holding that both elements of the offense of loitering and prowling must occur in the officer's presence and be complete before the officer takes action).

Here, the State argues that Detective Breedlove did observe Acevedo's conduct by reviewing Acevedo's electronic monitoring tracking record. We disagree. That record only set forth the general physical location of Acevedo at a particular time. It did not show what Acevedo was actually doing at any given time. Furthermore, Detective Breedlove's review of the record was long after the alleged alarming activity occurred. Even if we were to accept the State's argument that *Madge* and *Ellis* wrongly concluded that a law enforcement officer must contemporaneously observe the alleged suspicious conduct, we believe the State's evidence was still insufficient. As the Florida Supreme Court stated in *Ecker*, the purpose of section 856.021 is to provide law enforcement officers with a specific means to "eliminate a situation which a reasonable man would believe could cause a breach of the peace or a criminal threat to persons or property." 311 So. 2d at 110. The purpose of the statute is not effectuated where, as in the instant case, a law enforcement officer determines two months after the alleged suspicious conduct that there was a cause for alarm or concern for the safety of persons or property in the vicinity. To accept the State's argument would require the type of broad interpretation of the statute that was rejected by the Florida Supreme Court in *Ecker*.

Although the trial court and Ms. Baillergeon were understandably concerned by the events reflected in Acevedo's electronic monitoring tracking record, we are compelled to conclude that the State failed to prove that Acevedo committed the offense of loitering and prowling. Accordingly, it was error for the trial court to revoke Acevedo's probation.

7

REVERSED and REMANDED.

SAWAYA and LAMBERT, JJ., concur.